ALBERT HALBADIER V. THE STATE.

No. 5639. Decided March 24, 1920.

**1.—Adultery—Complaint—Motion to Quash—Credible Person—Accomplice.**

Where, appellant attacked the complaint by motion to quash, in a trial of adultery, because the same was sworn to and signed by his alleged paramour, contending that as an accomplice she was not a credible person within the meaning of Article 479, Vernon's C. C. P., held that the same was untenable, and the motion to quash was correctly overruled. Following Jones v. State, 58, Texas Crim. Rep., 313 and other cases.

**2.—Same—Question of First Impression—Accomplice—Credible Person—Complaint.**

The direct question as whether or not an accomplice is such credible person has never before been passed upon by this court and is one of much importance; however, in reviewing the decisions of the Texas courts, both in civil and criminal cases, it is held that in the use of the word "credible person" is merely meant whether he is a competent witness to testify, and does not, like in cases of purjury, involve the question as to what amount of testimony is necessary to sustain a conviction. Following Nixson v. Armstrong, 38 Texas, 296, and other cases.

**3.—Same—Statutes Construed—Procedure—Words and Phrases.**

Articles 34 and 35, Vernon's C. C. P., set forth fully and in detail the procedure necessary in the institution of prosecutions, and provide for taking a complaint and filing information, and no mention is there made of the requirement that the maker of the complaint should be a credible person, therefore, we hold that the word "credible" as used in Article 479, Vernon's C. C. P., should be construed as meaning competent to testify.

**4.—Same—Evidence—Declarations of Third Party's—Hearsay.**

Where, upon trial of adultery, the State was permitted to introduce in evidence the declaration of third parties to the State's witness with reference to the illicit relations between prosecutrix and the defendant out of the presence of the defendant, held that the same was hearsay and not permissible

87 Tex.—9

5.—Same—Declarations of Defendant—Corroboration.

Upon trial of adultery, the statements made by the defendant to other parties and the prosecutrix are admissible in evidence when testifed to by parties other than prosecutrix, and may be considered in the light of corroborative evidence.

6.—Same—Sufficiency of the Evidence—Accomplice—Corroboration—Rules Stated.

It is only necessary under our practice that the evidence offered to corroborate an accomplice, tends of itself, to connect the accused with the commission of the crime, and is ordinarily a question of fact for the jury, but this court has never been able to lay down a hard and fast rule as to what constitutes habitual carnal intercourse.

Appeal from the County Court of Kendall; tried below before the Honorable J. A. Phillip, Judge.

Appeal from conviction of adultery; penalty, a fine of $100.

The opinion states the case.

*Joe H. H. Graham,* for Appellant.—On question of complaint being supported by affidavit of paramour; Melton v. State, 207 S. W. Rep., 316; Strong v. State, 52 Texas Crim. Rep., 133; Hilton v. State, 53 S. W. Rep., 113; Wallace v. State, 141 S. W. Rep., 95; and cases cited in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the County Court of Kendall County, of the offense of adultery, and his punishment fixed at a fine of $100.

Appellant attacked the complaint by a motion to quash, because the same was sworn to and signed by his alleged paramour, the contention being, that as an accomplice, she was not a credible person within the meaning of Article 479, Vernon's C. C. P., which requires that before an information be filed, there must be a complaint made, charging the offense, which must be sworn to by a credible person.

The direct question as to whether or not an accomplice is such credible person, has never before been passed on by this Court, and is one of much importance, as the announcement of the rule invoked would of necessity mean that in any case hereafter, before the proper courts of this State, on the trial of which it should be shown that the maker of the complaint was connected with the offense, in any of the numerous ways by which one can become an accomplice, a withdrawal of the plea of not guilty would have to be granted on the ground of surprise; and the hearing of a motion to quash the complaint would follow, or else a motion in arrest of judgment would have to be sus-

ity to sign the same, it would be void, and the whole proceeding based thereon would necessarily fail.

While the direct question has not been decided in this State, there are opinions which we think fairly analogous.

In the early case of Nixon v. Armstrong, 38 Texas, 296, it was held that our statute requiring two or more credible witnesses to a will, merely meant two or more persons who were competent witnesses to testify, and nothing more. The attack on the credibility of the persons who witnessed the will in that case, was based on their interest in the estate. Again, in the case of Brown v. Pridgen, 56 Texas 124, the same rule was adhered to, and the court states that same had been the uniform construction of our Supreme Court theretofore; and that evidently the Legislature used the word "credible" in the sense which had been assigned to it previously by the various courts, in passing on the meaning of the word in like statutes. The court, in that opinion, further refers to the fact that the law declares certain persons incompetent to testify, and that when a person comes within any of those classes, he is, in law, no witness.

Again, in the case of Kennedy v. Upshaw, 66 Texas 442, where it was sought to show that the witnesses to the will were not in fact worthy of belief, Chief Justice Stayton held such testimony improper, and that within the meaning of the law, persons who were competent were deemed "creditable."

Likewise, in Gamble v. Butchee, 87 Texas, 643, the lamented Chief Justice Brown reaffirmed the rule that the requirement of the law meant simply two witnesses competent to testify to the execution of the will.

We believe the construction thus announced and adhered to by our Supreme Court, should be held applicable in the instant case. The affidavit is merely the original petition of the State, and its pleading by which the prosecution is begun, and unless there be some inhibition or bar-sinister, which would deprive the maker thereof of legal power to appear in court, we would hesitate to engraft upon our practice the novel as well as hurtful rule sought to be invoked by appellant.

Turning to the decisions of our own court, we observe, in the case of Perez v. State, 10 Texas Crim. App., 327, that Judge White says, in discussing an attack upon a complaint:

"Infamy occasioned by a party's having been convicted of felony renders him incompetent to testify, under our statute . . .

A complaint made by a party thus infamous is not a legal and valid foundation for an information, any more than his testimony would be admissible as legal evidence; and such an objection to a complaint would, if sustained by proper evidence, be good on a motion to quash or exceptions. If good on a motion to quash, then it would be equally available on a motion in arrest of judgment."

In the Thomas Case, 14 Texas Crim. App., 70, this Court, through Judge Willson, expressly affirms the holding in the Nixon v. Armstrong case, supra. The question in the Thomas case, was the power of the husband to make an adultery complaint against his wife; and the opinion, after referring to our Art. 479, supra, and expressly approving the Nixon v. Armstrong case, proceeds as follows:

"Therefore, as the statute, in effect, requires that the information shall be supported by the affidavit of a person competent to testify in the case as a witness, the question that next presents itself is, was the husband a competent witness to testify against the wife upon the charge of adultery?"

Answering this question in the negative, the court concludes the opinion by holding the husband incompetent to make the affidavit, and that the motion in arrest should have been sustained.

In the Dodson case, 35 Texas Crim. Rep., 571, in passing on a motion to quash based on the failure of the complaint to allege that its maker was a credible person, this court, through Judge Davidson, said:

"While such affidavit must be made by a credible person, yet we are not aware of any decision wherein it has been held that the affidavit must allege that fact. If the affiant *is not a competent witness,* and the affidavit shows that fact, such affidavit should be quashed. If it fails to allege this, it can be shown as a fact, and in that event the affidavit would not be good."

In the Jones case, 58 Texas Crim. Rep., 313, this Court, again speaking through its learned Presiding Judge, and referring to a motion to quash, based on the claim that the maker of the complaint was not a credible person, said:

"Under the decisions bearing on this question, this court has held that a credible person is one who is competent to give evidence and is worthy of belief. There is no question of the fact that Wilson was a competent person . . . We do not believe the statute with reference to requiring the affidavit to be made by a credible person contemplates that a person whose reputation for truth and veracity may be attacked is a person who is not credible."

So it appears that in all our decisions, where the question as to what is meant by a credible person applies to matters of procedure, it has been uniformly held that it means one who is competent. It seems to us foreign to the issue raised, and not necessary to dispose of the same, but inasmuch as appellant has cited as authorities in support of his contention, certain decisions of this Court in perjury cases—notably Conant, 51 Texas Crim. Rep., 610; Melton v. State, 84 Texas Crim. Rep., 398, 207 S. W. Rep., 316; Smith v. State, 22 Texas Crim. App., 196; Wilson v. State, 27 Texas Crim. App., 47, we will notice said cases.

We observe that a question involving the amount of testimony necessary to sustain or warrant a conviction for perjury, seems in no

way related to the one raised in the instant case. That this Court has always regarded the principles involved as being altogether different, appears from a comparison on the one hand, between the Jones case, supra, where this Court held that the lack of credibility of the maker of the complaint could not be shown by proof of his bad reputation for truth and veracity, and, to the same effect, the Kennedy v. Upshaw case, supra, in which the Supreme Court said, that the only question being the competency of the witness to testify that he witnessed the will, evidence of his bad reputation for truth and veracity was not available; while, on the other hand, in the Smith case, supra, the Cleveland case, 50 Texas Crim. Rep., 6, and others which might be cited, we held in perjury cases that the lack of credibility of a witness can be shown by proof of bad reputation for truth and veracity, as well as by contradictory statements, and the State's case be thus broken down. We do not think the expression used in the Smith and Wilson cases, supra, both being perjury cases, to the effect that in the meaning of the perjury statute, a witness, to be *credible,* must be one competent to testify, and worthy of belief, is applicable to .the word "credible," when used with reference to the maker of the complaint.

We would further call attention to the fact that Articles 34 and 35, Vernon's C. C. P., set forth fully and in detail the procedure necessary in the institution of prosecutions, and provide for taking complaints and filing informations, and no mention is there made of the requirement that the maker of the complaint should be a credible person. Nor is there any such language used in the articles of our statute, relating to the making of a complaint itself, whether the purpose be for the institution of a felony or a misdemeanor prosecution. See Articles 972-973, Vernon's C. C. P.; also Articles 268-269 Id.; and also Articles 34-35 Id. We think that the word "credible," as used in Article 479, should be construed as meaning competent to testify, and that the motion to quash was properly overruled.

By his bill of exceptions No. 4, appellant complains of the admission over objection, of certain evidence, given by Hon. J. A. Phillip, County Judge, which evidence is as follows:

"Well, I don't remember the date, but I was walking to town. I was Justice of the Peace at the time. I was walking to town—a party came over here and told me about this girl; said she was working for Halbadier and was in a family way, and said somebody ought to do something, and in that way it was reported to me, so I went to the girl and asked her if she was in a family way; she acknowledged it. I asked her by whom, and she told me. I went to her mother and asked her if she could come down here, I wanted to see her on business. She said yes, said, 'I know what you want;' she said she had heard about this yesterday; said, 'some people out there fishing told me about it,' and she went to the girl with me and the girl acknowledged it, and Mrs. Kirschner asked me would I go with them over to

San Antonio and see Mr. Halbardier. I told them I would and pay my own expenses. I went down there and saw Mr. Halbardier.''

The objections were that this was hearsay, out of the presence of the appellant, was not *res gestae*, and occurred months after the alleged adulterous intercourse had terminated. We are of opinion that this evidence was hearsay and inadmissible, except for the fact that Judge Phillip went with the party to San Antonio.

We think the statements made by appellant to Judge Phillip, Mrs. Kirschner, and the prosecutrix, are admissible, and when testified to by parties other than prosecutrix, may be considered in the light of corroborative evidence. We are not prepared to say that the evidence in this record is not sufficient to sustain the conviction. It is only necessary under our practice, that the evidence offered to corroborate an accomplice, tends of itself, to connect the accused with the commission of the crime. Ordinarily its sufficiency is a question of fact for the jury. As to just what constitutes habitual carnal intercourse within the meaning of the statute, this Court has never been able to lay down any hard and fast rule regarding it.

For the admission of said erroneous testimony, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*