## OLLIE LARA v. STATE.

No. 24272. February 23, 1949.

*Wm. H. Hamblen,* Edna, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for adultery with a fine of $100.00.

The only question presented in the brief by appellant complains of the failure of the court to permit counsel for appellant to read to the jury excerpts from opinions of this court discussing the evidence required to prove habitual conduct sufficiently to constitute the offense of adultery. The procedure is unusual and the question is unusual. Just what he wanted to read is not shown by the bill. Incidentally the record discloses that complaint was made that the evidence was insufficient. This is the only question necessary to be discussed.

Emma Smith, the mother of Ella Louise Callis, testified that about the last of May, 1948, she caught appellant in the bed with her daughter while they were engaged in sexual relationship; that the appellant spent the night with her daughter; that he repeated the same thing about two weeks later. Willard Smith,

the husband of Emma, testified in the case and said that he came home, as we understand the evidence, on the second occasion about which Emma Smith testified, and he corroborates her statement. Emma Smith testified further that the appellant came with O. B. Callis to her house, where Ella Louise Callis lived, on a number of occasions, "* * * but also came up a lot of times when O. B. wasn't there." Willard Smith also testified that appellant came to the house on "several occasions" with Ella Louise's husband, * * * and on several occasions he came there alone." He said the last time appellant was there was about ten days before O. B. Callis was shot, at the house, by Goldman Brown—a half-brother of Ella Louise. Apparently this was the same time about which Emma testified and is the third visit. O. B. Callis, the husband of Ella Louise, testified for the state. He said that he and his wife were separated; that he was shot by Goldman Brown on June 9, 1948; that on "several occasions" he had come home after spending the night at Edna, where he was attending a Veteran's School, and found that his wife had been out all night; that twice he saw her coming home in the morning from a house where appellant was staying. It is not shown who else lived there. He had been a good friend of appellant's and had him out to visit in his home a number of times. All he knew was that he saw his wife, on two occasions, coming home in the morning from the house where Ollie was staying.

Appellant's defense consisted of several witnesses who testified to his good reputation as a peaceable and law abiding citizen, together with his denial that he had ever at any time had sexual intercourse with Ella Louise Callis. She also testified in his behalf making the same denial. The foregoing constitutes all of the pertinent evidence on the question at issue.

Under the allegations and the proof, appellant and his paramour were not married and were not living together. It became necessary under the statute to introduce sufficient proof to support the finding of the jury that their conduct was habitual. It has frequently been said, in discussing facts of cases, that it was a matter within the discretion of the jury and that no sound definition could be given to describe what is required to constitute habitual intercourse. Halbadier v. State, 220 S. W. 85.

Among the case discussing the measure of evidence required is Hafley v. State, 224 S. W. 1099. After discussing many cases, the opinion says, "The conclusion from these cases is that sporadic cases of intercourse will not suffice to prove habitual

carnal interecourse." See also collation of cases in Branch's Ann. P. C. p. 599.

In the recent case of Kennedy v. State, 200 S. W. (2d) 400, at page 407, Judge Graves says on motion for rehearing: "However, the decisions seem to have been rather stringent in construing the word 'habitual,' although no hard and fast rule has been laid down relative thereto. Proof of occasional acts are not sufficient to show habitual intercourse. See Hafley v. State, 88 Tex. Cr. R. 51, 224 S. W. 1099; Reynolds v. State, 100 Tex. Cr. R. 508, 271 S. W. 907; Cordill v. State, 83 Tex. Cr. R. 74, 201 S. W. 181. While such occasional relations would doubtless offend against the moral law, the inference that such did thus offend is plainly seen from the repeated question. The statutory law does not thus denounce such as an act contrary to the statute."

It would appear from all of the evidence in that case that suspicious circumstances should have but little weight. The family of the women involved must have been very loose in their conduct. Her mother had three illegitimate children, each with a different father. Her brother had a wife with several children in the town of Edna, while he lived with another woman in the country. The husband of Emma Smith had roomed much of his time in a house of ill repute. The family is shown by the evidence to have been so adulterated and their habits of life were such that the suspicious circumstances relied upon against appellant would have but little, if any, probative force. Whether they are white or black is not disclosed by the evidence, nor does it matter. We are concerned in this case not with the low character of the parties involved, but solely with the question of the sufficiency of the evidence to support the jury's verdict.

The judgment of the trial court is reversed and the cause is remanded.