THOMPSON BROWN v. A. W. PRIDGEN.

(Case No. 538.)

1. WILL BY MARRIED WOMAN.— A married woman may dispose of her property by will, subject to the liability of her community property for the payment of community debts.

2. ATTESTING WITNESS TO WILL.— The construction heretofore given to the statute requiring the will, if not wholly written by the testator, to be attested by two *credible* witnesses, which makes the word *credible* identical in meaning with the word *competent*, reaffirmed.

3. FACT CASE — UNDUE INFLUENCE ON TESTATOR.— See opinion for facts upon which it was held error not to submit to the jury the question of undue influence on a testator in the execution of his will.

APPEAL from DeWitt. Tried below before the Hon. D. D. Claiborne.

Mrs. Cinda Brown, the wife of appellant, in August, 1873, made her last will and testament, bequeathing her property to the heirs of her brother, A. W. Pridgen. Mrs. Brown died a few days after the will was executed, and Pridgen made application to the district court of DeWitt county to have the will probated, when the appellant contested the same upon the following grounds:

*First.* Because the testatrix was of unsound mind at the time of the execution of the will.

*Second.* Because the legatees were not sufficiently named or designated in the will.

*Third.* Because she therein sought to dispose of her interest in the community property, which it is claimed she could not do by will.

*Fourth.* Because the will was the result of undue influence exercised by Bolivar Pridgen over Mrs. Brown at and before the execution of the will.

The case was tried August 21, 1875, and resulted in a verdict and judgment probating the will, from which this appeal was taken.

The court refused to charge the jury upon the question of undue influence, and this refusal presents the main question in the case.

*H. Clay Pleasants*, for appellant.

*Philips & Lackey*, for appellee.

WATTS, J. COM. APP.[1]— Every person who is by law competent to make a will may dispose of any and all property which he or she may own in that way; there is nothing in the law regulating marital rights that would deprive a married woman of the privilege of disposing of her interest in the common property by will. The wife's right to such property is as absolute as that of the hus-

[1] Associate Justice Stayton did not sit in considering this opinion.

band; the only difference is, that he is authorized to control and dispose of it during the coverture. The will speaks and is operative only after the death of the testator; hence the will of a married woman would not deprive the husband of the control and disposition of the common property during the coverture; her interest in such property, subject of course to the payment of the community debts, will pass to and vest in the legatee under a valid will as effectually as any other property owned by her.

Our statute provides that when the will is not wholly written by the testator, that it shall be attested by two or more credible witnesses. The court charged the jury in this case that the word "credible" as used in the statute meant competent; and that if the will was attested by two competent witnesses, that it would not be invalid for the want of a legal attestation. Appellant urges that while the charge is in accord with the weight of authority, that the court ought not to be bound by such precedents, as they are not in harmony with right, reason and sound legal principles. Evidently the legislature used the word in that sense which had been assigned to it previously by various courts in passing upon the meaning of the word in like statutes.

This court has uniformly held to that construction; it was so decided at the recent Tyler term in a case presenting the identical question. Even if that construction admitted of doubt, it has been too long acquiesced in and acted on to be overruled. It has now become a rule of property, and valuable rights depend upon an adherence to it.

However it does not occur to us that the construction is questionable. The legislature could not have meant that the will should be invalid because perchance the court or jury might in after years believe that one of the attesting witnesses was at the time of the attestation unworthy of belief.

Such a construction might often result in declaring a will void, when in fact it had been executed in the utmost good faith, and when the testator had confidence in the credibility of the witnesses that he had called to attest his act.   So valuable a right as that of disposing of property by will was not intended to be placed upon such a precarious foundation as would result from the construction for which the appellant contends.

The law declares certain persons incompetent to testify, and when a person comes within the meaning of that rule, he is in law no witness.   For prudential reasons two witnesses are required to attest the will, and without this requisite it is not a will; hence if a person who is declared by the law not to be a witness should sign with one who is competent, it could not be said that the will was attested by two witnesses as required by law.

Upon the trial the court refused to instruct the jury relative to the issue presented by the contestant of undue influence.   It is to be presumed that the court was of the opinion that the evidence was not sufficient to authorize the charge.   The court is required to explain the law applicable to the issues made by the pleadings and the evidence.   It is only such issues made by the pleadings as are supported by the evidence upon which the court is authorized and required to charge.   In the case before us it is claimed on the one hand that there was sufficient evidence adduced in support of that issue to require the court to submit it to the jury; while on the other it is insisted that the evidence was not sufficient to sustain a verdict affirming the issue, and therefore the court correctly refused to give the charge.

There was considerable conflict in the evidence, while evidence was also adduced tending to impeach the witness Bolivar Pridgen.   In such a case it is the duty of the court to explain to the jury the law applicable to every phase of the case made by the pleadings and evidence, without regard to conflicts in or preponderance of the evi-

dence or the credibility of the witness, as these are questions to be determined by the jury and not by the court.

To aid in a correct determination of the question, we shall, without regard to any conflicts in the evidence, and without any reference to the opposing evidence, give briefly the substance of the evidence in support of the issue, and which is as follows:

The will was written by Bolivar Pridgen and executed at his house, in the absence of the contestant and without his knowledge; no one was present when is was prepared and signed except Pridgen and the testatrix; the former's son was afterwards called in to attest the same, and the existence of the will was not made known to contestant until after the death of his wife.

Pridgen and contestant lived some four of five miles from each other; the son of Pridgen went to Brown's house with a carriage and carried Mrs. Brown home with him, and it was then she made the will. Brown was at home when they left, and was not informed that she was going away, but supposed that she was only going out riding. Mrs. Brown was at the time in feeble health, and laboring under mental depression; she was under the entire control of Pridgen, and acquiesced in whatever he said. Two or three days before her death Dr. Phillips heard a conversation between her and Pridgen in regard to Brown's money and property. Pridgen left to get water; Mrs. Brown was crying at the time, and remarked to Dr. Phillips that she had been persuaded. Either then or about that time she told Phillips that she had done wrong. Prior to this she had said in his presence, that if she could not get to spend Brown's money she would dispose of it in some other way. She returned home and died the next day. The day before her death Pridgen told Phillips that she had made a will, remarking at the time, "Poor little thing, she did not know what the law was in regard to the disposal of property until he advised her, and that he was acting as counsel for her."

Bolivar and A. W. Pridgen were cousins. Brown and his wife had lived together happily for about thirteen years, and had no children.

Now, taking this affirmative evidence as true, if it would sustain a finding affirming the issue, it was error for the court to refuse to give the charge as asked.

While her mental condition might have been such, that left untrammeled she had testamentary capacity, nevertheless, considering that she was then, and had been for a long while, in feeble health and laboring under mental depression, it is but reasonable to suppose that she could have been much more readily influenced unduly than if she had been in good health and possessed a vigorous intellect. Therefore, taking into consideration that circumstance in connection with the other facts and circumstances, such as that she was entirely under Pridgen's control and acquiesced in whatever he said; the way in which she was carried to his house; the secret manner in which the will was made and signed, keeping a knowledge of its existence from the husband until the death of the wife; her remarks to Dr. Phillips about the matter, and distressed condition at the time, we conclude that the evidence, if true, would sustain a verdict in favor of the contestant. It should be clearly understood that we express no opinion as to whether the evidence is or not true, nor as to whether the evidence preponderates upon the one side or the other of this issue. What we decide is, that if the jury should determine that the evidence was true, and find a verdict in favor of the contestant upon that issue, it would not be set aside because it was not sustained by the evidence. In our opinion the court erred in refusing to give the charge as asked, and for which the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 19, 1882.]