Criminal law ⬅⬅⬅753(2)—Defendant held not entitled to instructed verdict because state introduced exculpatory statements of defendant negativing his guilt.

Fact that state introduced in evidence statements made by defendant at time of alleged commission of offense, which were exculpatory in their nature, and negatived his guilt, did not entitle defendant to directed verdict on ground that such exculpatory statements had not been disproved by state, since it is matter for jury and not court to determine whether such statements had been proven to be untrue.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Lakie Haywood was convicted of forgery, and he appeals. Affirmed.

George W. Johnson, of New Boston, and Sid Crumpton, of Texarkana, for appellant.

Sam D. Stinson, State's Atty., of Austin, and Nat Gentry, Jr., Asst. State's Atty., of Tyler, for the State.

HAWKINS, J. Conviction is for forgery of a check for $14, dated August 2, 1924, purporting to be signed by Eddie Cotton, and drawn against the Guaranty State Bank of Hooks, Tex. The punishment is two years in the penitentiary.

The evidence shows that Cotton was a negro engaged in farming operations, in which he hired a number of hands to assist him. Appellant was a cousin of Cotton, for whom he had been working for about a week. Cotton owed him $4 on August 2d, and paid him by check on said bank for said amount. Appellant presented the $4 check, which was paid. He later presented for payment the $14 check, which is claimed to have been a forgery. The bank employé to whom this check was presented refused payment, and reported the incident to the president of the bank, who asked appellant about it. Appellant said while on the way from Cotton's place to town a negro gave him the $14 check and requested him to cash it. In his conversation with the officer of the bank he claimed never to have seen this negro before. Appellant testified on the trial that the negro from whom he received the $14 check was named Jones. The state introduced a witness who claims to have left Cotton's place with appellant and to have been with him all the time until he reached the town of Hooks, and who says that no one on the road gave appellant any check as claimed by the latter. It became an issue before the jury by testimony pro·and con whether the incident claimed by appellant to have occurred on the road whereby he secured the $14 check from another negro was true or false. At the conclusion of the evidence appellant requested the court to instruct the jury to return a verdict of not guilty, basing such request upon the contention that, because the state had introduced in evidence statements made by appellant at the time of the alleged commission of the offense which were exculpatory in their nature and negatived guilt, appellant was entitled to an instructed verdict on the ground that the exculpatory statements had not been disproved by the state. The court properly declined to give this instruction. It was a matter for the jury, and not the court, to determine whether the exculpatory statements made by appellant had been proven to be untrue. No exception was taken to the charge because it omitted to submit such issue to the jury, and no special charge upon the point was requested. The court did instruct the jury, if they believed appellant in good faith received the $14 check from one Jones, and endeavored to cash it for Jones, without knowing the same to have been forged, or if they had a reasonable doubt as to this, they should acquit appellant.

Finding no error in the record, the judgment is affirmed.

═══

### KURTZ v. STATE.    (No. 9497.)

(Court of Criminal Appeals of Texas. Nov. 25, 1925.)

1. Adoption ⬅⬅⬅20—Adopter, to be liable for support of child when natural parents living, must relieve parents of their obligation to support child.

Before obligation to support child can be enjoined upon adopter when child's natural parents are living, adopter must do more than merely make child an heir to his estate, but he must by his own act relieve child's natural parents of obligation to support it, and must voluntarily assume such burden himself.

2. Adoption ⬅⬅⬅20—Defendant adopting child whose natural parents are living, without having parental authority and custody transferred to him, held not subject to conviction for nonsupport of child.

Where defendant and wife adopted child, in compliance with Complete Tex. St. 1920,

arts. 1, 2, but terms of articles 3–5 were not complied with, in that parental authority and custody were not transferred in writing, *held* that defendant could not be punished, under Pen. Code 1925, art. 602, for failing and refusing to suport such child whose natural parents are living.

Commissioners' Decision.

Appeal from Bexar County Court for Criminal Cases; George G. Clifton, Judge.

George O. Kurtz was convicted of willfully failing and refusing to provide for support and maintenance of a minor child, and he appeals. Reversed and remanded.

A. L. Matlock, of San Antonio, for appellant.

Sam D. Stinson, State's Atty., of Austin, and Nat Gentry, Jr., Asst. State's Atty., of Tyler, for the State.

BERRY, J.   The offense is willfully failing and refusing to provide for the support and maintenance of a minor child, and the punishment is a fine of $50.

[1, 2] The testimony is undisputed to the effect that the minor child in question is an adopted child of the appellant and his divorced wife, and that it is in necessitous circumstances, and that the appellant refuses to support the same. The facts are sufficient to show that the natural parents of the child are now living in Texas, and that the child was adopted by appellant and his wife while they were living together; the adoption being under articles 1 and 2 of title 1 of Vernon's Complete Texas Statutes. It is clear from the evidence that articles 3, 4, and 5 of title 1 of said statutes have not been complied with, and these articles do not apply in the instant case unless they are so related to articles 1 and 2 as to make an adoption under articles 1 and 2 carry with it the rights conferred upon the child by a compliance with articles 3, 4, and 5 of said title of said statutes.

It is appellant's contention that under the laws of this state and under the facts above stated he cannot be convicted for failing to support his adopted child. The record shows that appellant and his divorced wife, before being divorced, filed in the office of the county clerk of Bexar county a statement in writing in compliance with article 1, supra. It further shows that neither the parent nor parents of the child in question signed any instrument in writing transferring their parental authority and custody over said child so adopted to the appellant and his wife.

We think it clear, under article 5, supra, that, if the terms of article 3, supra, had been complied with, this conviction would be valid. The very terms of article 5 make manifest the intention of the Legislature to require the same treatment from adopters toward an adopted child as is required in case of parents toward their own children. We think,

however, that article 5, supra, is not applicable to the facts of this case. On the contrary, we think it would apply only in a case where the parent or parents of the child who had been adopted as provided in articles 1 and 2, supra, have by proper instrument in writing transferred their parental authority; and we think that, when only article 1, supra, has been complied with, there is no obligation on the part of the person adopting a child to support same when its natural parents are shown to be living. Under article 1, supra, the person adopted becomes the legal heir of the party adopting him, and derives no other benefit from such act on the part of the party so adopting. Property rights growing out of this question have been passed on by our Supreme Court in the following cases: Eckford v. Knox, 67 Tex. 200, 2 S. W. 372; Harle v. Harle, 109 Tex. 217, 204 S. W. 317, 15 A. L. R. 1261; Walton v. Yturria, 109 Tex. 220, 204 S. W. 315, L. R. A. 1918F, 1079.

The foregoing cases were concerned only with the statute as detailed in articles 1 and 2 thereof, but we think it clear that, before the party could claim the rights and privileges given him under article 5 of the statute, it would be essential that article 3 be fully complied with, otherwise a party acting under article 1 might adopt any child whose parents are living for the purpose only of making such child the heir to his estate; the child might continue to live with its own parents, and, while they might not be averse to allowing it to inherit its neighbor's property at his death, they might seriously object to surrendering parental control over it, and would be loath to dispense with its association, and of course there would be no statute and no rule of law that would require them to make this sacrifice contrary to their own voluntary will, and yet, if every person who adopted an heir under article 1 must be held accountable under article 5 for the support, maintenance, and humane treatment of such a child, then, under the conditions above stated, a party whose only offense has been the gratuitous act of making his neighbor's child his heir, could be criminally prosecuted while living for failing to support such child, although it remained in another's custody. We think the illustration makes it manifest that such was not the legislative intent when article 602 of the P. C. was enacted. On the contrary, we think it equally certain that it is only where the transfer of parental authority and custody over the child has been made in conformity with article 3 that the obligations imposed by article 5 apply.

We are not called upon to decide and do not decide as to the construction to be given to the statute above mentioned, where the parents of the child in question are dead. But, where the parents of the child are living, to hold that a party who had done nothing more than to comply with article 1, supra, may be punished under article 602, P. C.,

would be to hold that, simply because he has seen fit to make one to whom he owes no such natural duty his heir when dead, he thereby takes upon himself the additional burden of supporting such person while living. This would be in effect to repay gratuitous generosity with ingratitude, and would make a mere gratuity a weapon of offense in the hands of a belligerent beneficiary. Before the obligation to support such child can be enjoined upon the adopter when the child's natural parents are living, the adopter must do more than merely make him an heir to his estate. He must by his own act relieve the child's natural parents of the obligation to support it, placed upon them by nature and by law, and he must voluntarily assume that burden himself.

So believing, we hold that the facts above stated, are insufficient to support the verdict, and the judgment is therefore reversed, and the cause remanded.

PER CURIAM, The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.