JACK BELL ET AL. V. MRS. LUCY THOMSEN ET AL.

No. 4212.    Decided June 27, 1925, February 16, 1927.

(273 S. W., 1109).

**1.—Adoption by Wife—Joinder by Husband.**

A married woman could adopt an heir by compliance with Arts. 1 and 2, Rev. Stats., 1895, without her husband joining in the instrument of adoption.    (Pp. 328, 329).

**2.—Same.**

No joinder by the husband was required by the words of the statute of adoption.    It affected none of the rights, privileges or duties of the husband; and the designation of her heir by the wife alone was in no way contrary to the policy of the law.    (P. 329).

**3.—Adoption by Wife—Acknowledgment—Privy Examination.**

No privy examination of the wife on her acknowledgment of the instrument of adoption was necessary.    Its authentication for record by ordinary form of acknowledgment or proof by subscribing witnesses was sufficient.    The husband could have no interest in coercing the execution of such an instrument, nor his wife need any protection from his influence. (Pp. 330, 331).

**4.—Trespass to Try Title—Common Law.**

An interest in real estate which was the separate property of a deceased wife was claimed by plaintff as her heir by adoption, and by defendants as grantees of the heirs of the husband surviving and inheriting from her.    Such deceased wife was the common source of the title claimed by each; and it was error to deny plaintiff recovery because not showing title from the sovereignty.    (Pp. 332-335).

**5.—Continuance.**

An application for continuance by plaintiffs suing for recovery of land, in order to procure evidence to show title from the sovereignty of the soil, and so meet a ruling denying their claim of title from a common source with defendants, was addressed to the discretion of the court, abuse of which in denying the continuance is here held not to be shown.    (Pp. 335, 336).

Questions certified from the Court of Civil Appeals for the Tenth District, in an appeal from McLennan County.

The Supreme Court referred the questions certified to the Commission of Appeals, Section B, for their opinion thereon, and adopted same as its answer to the questions.

Separate motions for rehearing were filed by appellee Lucy Thomsen, joined by her husband, by appellee Myrtle Chapman and her husband, and by appellees Wood, Ridgeway and Hamilton. These were referred to Section B of the Commission of Appeals for their opinion, which recommended that they be overruled. Final disposition of the case by the Supreme Court was not made until February 16, 1927, when the motions for rehearing were overruled and the original opinion of the Commission certified as its answer to the questions.

*R. A. Wood,* for appellants Myrtle and B. F. Chapman.

The cross action of appellant Chapman shows two good causes of action. The first, that Myrtle Chapman is the adopted daughter of Mary Doud, and is entitled to the property involved in the suit as the only heir at law of Mary Doud; that Mary Doud complied literally with the statute in her efforts to adopt Myrtle Chapman; that the law meant what it said when it provided that "any person" might adopt an heir; that no law, statutory or other, required the joinder of the husband to make valid the adoption by the married woman; that the privy acknowledgment is not necessary, but that the ordinary acknowledgment is sufficient. The principal purpose of the acknowledgment under adoption statute is to admit to record and give notice. The ordinary acknowledgment accomplishes all this, and doubtless was the one in the mind of the Legislature when the adoption statute was passed.

Appellants' statement of their second cause of action, if equity will aid the law at all, shows an unanswerable cause of action. It has been said that equity follows the law. Sometimes, as was held in the cited case, equity supersedes and takes the place of the law. Holloway v. Jones, 246 S. W., 587.

*Parker & Patterson* and *Street & Caton,* for appellants.

Where plaintiff in trespass to try title shows a chain of title to himself superior to defendant's emanating from same person through whom plaintiff deraigns title, common source is shown, and plaintiff is entitled to recover unless defendant shows a superior title in himself. Webster v. McCarty, 16 Texas Civ.

App., 160, 40 S. W., 823; Smith v. Davis, 18 Texas Civ App., 563, 47 S. W., 101; Burns v. Goff, 79 Texas Civ. App., 239, 14 S. W., 1009; Letcher v. Allen, 43 Texas Civ. App., 102, 95 S. W., 572; Gordon v. Hall, 29 Texas Civ. App., 230, 69 S. W., 219; Edrington v. Butler, 33 S. W., 143; Gilmer v. Beaucamp, 40 Texas Civ. App., 125, 87 S. W., 907; Baldwin v. Goldfrank, 88 Texas Civ. App., 258, 31 S. W., 1064.

Where a deed upon its face shows that the consideration of said deed was out of the separate fund of the wife, and the conveyance is to her as her separate property, the presumption of community estate is thereby overcome, and those who claim the property to be community property have the burden of showing same. Laufer v. Powell, 30 Texas Civ. App., 604, 71 S. W., 549; Goldberg v. Zellner, 235 S. W., 870.

Where the evidence shows that a husband pays for real estate and causes the deed to be made to the wife a presumption of gift arises which overcomes the primary presumption of community estate. Smith v. Boquet, 27 Texas, 513; Wren v. Howland, 33 Texas Civ. App., 87, 75 S. W., 894; Tison v. Gass, 46 Texas Civ. App., 163, 102 S. W., 751; Cummins v. Cummins, 224 S. W., 903.

A party plaintiff should be allowed to withdraw his announcement of ready where he is not in a position to take a non-suit when in the progress of a trial it appears that his client might lose a valuable right which could be protected upon a subsequent trial by the procurement of additional evidence.

The adoption statute and rights thereunder being purely statutory, are strictly construed. Rev. Stats., 1911, Arts. 31, 6802, 6803, 6805; Burns v. Burns, 132 Fed., 485, 137 Fed., 781; Sarazin v. Union Ry. Co., 55 S. W., 92.

*Bryan & Maxwell,* for appellees Thomsen.

A deed of adoption by a married woman, in which her husband did not join, and which was not acknowledged by her, as provided in case of deeds, is void. There can be no equitable adoption in Texas. Rev. Stats., Arts. 1, 6802-6805; Burns v. Burns, 132 Fed., 485, 137 Fed., 781; Sarazin v. Union Ry. Co., 55 S. W., 92; Conrad v. Herring, 83 S. W., 427; Royal Neighbors of America v. Fletcher, 230 S. W., 476; Thompson v. Waits, 159 S. W., 82; Taylor v. Deseve, 16 S. W., 1009.

All property, real and personal, acquired during marriage is presumed to be community property, whether taken in the name of the husband or of the wife. When property acquired during marriage is taken in the name of either spouse the person

asserting that such property is separate property has the burden of making proof thereof. Rev. Stats., Art. 4623; Stoppleberg v. Stoppleberg, 222 S. W., 587.

*W. L. Eason,* for appellees Wood, Hamilton and Ridgeway.

The uncontradicted evidence shows that at the time this suit was instituted Lucy Thomsen was in possession of tracts 1, 2, 3 and 4, and N. Wood was in possession of tract 5, and Rhoda Ridgeway was in possession of tract 6. Possession is sufficient evidence of title to support an action in trespass to try title. Watkins v. Smith, 91 Texas, 590, 16 Michie's Digest, 606.

The plaintiffs did not attempt to deraign title from the sovereignty of the soil, but relied exclusively on common source, asserting that all of the property involved in this suit was owned by Mary Doud as her separate property. But the plaintiffs failed to introduce in evidence any instrument purporting to convey to any of the defendants the interests of Bell, Kendrick, Butler or Green. Howard v. Masterson, 77 Texas, 41; Hendricks v. Huffmeyer, 90 Texas, 577; Story v. Birdwell, 45 S. W., 847; Sweeten v. Taylor, 184 S. W., 694.

MR. JUDGE STAYTON delivered the opinion of the Commission of Appeals, Section B.

The certificate, in connection with an alleged adoption occurring September 25, 1895, propounds this question of law:

1. "Is the joinder pro forma by the husband of a married woman in an instrument of adoption by her under the provisions of Arts. 1 and 2 of the Revised Statutes, essential to the validity thereof?"

The statutes upon the subject read, in their original form of 1850, that "any person" may adopt another by "filing * * * a statement in writing by him or her signed" * * * reciting the adoption of such person "as his or her legal heir. * * * Provided, however, that if the party adopting such person have * * * a child or children, begotten in lawful wedlock, such adopted child or children shall in no case inherit more than one-fourth of the estate * * * which can be disposed of by will." Ch. 39, General Laws, 1850.

Except for the superfluous last seven words, the codifiers of 1879 proposed this law to the Legislature, as Arts. 1 and 2, in the same form in which it had been enacted in 1850, employing masculine words entirely in this particular place, but making the use of the masculine include that of the feminine gender

here, as well as elsewhere in their revision, by a separate statute. Art. 3138. They reported that no change had been made by them in the title of Adoption. 2 Sayle's Statutes 1879, p. 715. Their work, in this respect, having been accepted and enacted, later, in the same words, entered the Revised Statutes of 1895, by which the present case is governed. Arts. 1, 2, 3268.

It is settled that the effect of adoption under these statutes was not to invest the adopted person with any contractual or property right nor to induct him into the family of his adopter, but was solely to make him a legal heir for the purpose of inheritance, subject to being pretermitted by will, and, in the absence of the latter, entitled to priority, if he were alive at the death of the adopter, to persons in any remoter rank of descent, such as the surviving spouse (to an extent), the parents, or the collateral kin of the intestate. Harle v. Harle, 109 Texas, 214; State v. Yturria, 109 Texas, 220; Masterson v. Harris, 107 Texas, 73; Jordan v. Abney, 97 Texas, 296; Taylor v. Deseve, 81 Texas, 246; Eckford v. Knox, 67 Texas, 200.

As the law stood in 1895, there could have been no reason for requiring the joinder of the husband in his wife's acts of adoption. None of his vested rights or privileges, no duties or obligations on his part, and nothing presently affecting the state or condition of any of the property of either spouse or possible of resulting in prejudice to the wife, could have been involved. Against his will and to his preclusion, under statutes already existing, the property of his wife at her death might have become that of any devisees that she might have choosen, and indeed of any offspring of her faithlessness. General Laws 1840, p. 167; General Laws 1848, Ch. 103; Brown v. Pridgen, 56 Texas, 124; Engleman v. Deal, 14 Texas Civ. App., 1, 37 S. W., 652.

The words of the statutes, "any person" and "his or her," underwent the same treatment in the case of adoption as did the similar words, "every person" and "he or she" in the case of wills. And in the instance of adoption these broad expressions, in their alternative sense, were used in direct contemplation of "wedlock."

It was not contrary to the policy of the law for the Legislature to permit a wife to designate heirs without the joinder of her husband. Since the adoption statutes made no requirement of joinder and used language showing that it was not intended, the conclusion follows that, at the time of the transaction in the present case, it was not necessary.

No reason has been seen why the same thing is not true of

the law after it was amended in 1907, but, as the case requires no decision of that point, it has not been investigated and consideration of it will be omitted.

The Court of Civil Appeals asks, also, for opinion upon this question:

2. "If such joinder is not essential to the validity of such instrument, is the privy examination and acknowledgment of such instrument as prescribed by Art. 6802 and 6805 of the Revised Statutes for acknowledgments by married women, essential to the validity thereof."

No purpose could have been fostered by requiring the privy examination of the wife in so simple a transaction as adoption, of whose effect to make the adopted person an heir, she, as sole author, would have been as fully conscious as anyone else. The certificate points out that she could already have reached the same object by will without advice from anyone at all; and that is true and should be kept in mind. Adoption would not have tended in any way to impoverish her or dissipate her property during her life. As it would have been revokable by testament, it would have been of no real value so as to attract purchasers, and, for that reason and because it would have been against his own interest as an heir, the husband would not have been expected to bring it about by any form of duress or persuasion. It may be properly inquired, since a wife may in certain cases deed without privy acknowledgment,, as when her husband has deserted her, because he can no longer exercise "undue influence over her" (Wright v. Hays, 10 Texas, 129), whether a similar principle may not reasonably have been applied by the Legislature to its scheme of adoption, which was as free from that danger and which in addition did not involve any form or phase of a conveyance.

The adoption statutes have always required that the adopter's "statement in writing" shall be "signed and duly authenticated or acknowledged, as deeds are required to be * * * and * * * admitted to record" and that they shall take effect after being "signed and authenticated or acknowledged, and recorded as aforesaid."

The word "authenticated" is, in the present inquiry, the key to their literal interpretation. It has from the earliest time been considered in this particular section of the country (and no doubt in other parts) that, to authenticate an instrument, is an official act. Houk "Written Instruments," pp. 23-27, 46, 54, 56; Rev. Stats. 1879, Arts. 601, 2255; Rev. Stats. 1895, Art. 5353; U. S. Rev. Stats., Secs. 905, 906; Mayfield v. Sears, 133

Ind., 86.   And as applicable to deeds in Texas, a writing has always been considered as authenticated and entitled to registration ·when "acknowledged or proven for record" before a proper officer then certifying to such fact.   Acts April 6, 1861, p. 37; Jan. 14, 1862, p. 57; April 27, 1874, p. 152; Houk, p. 37. The word has had no reference to requirements as to the execution of a deed but only those for its registration.   In this State the authentication of deeds has always been accomplished either by official certificate of acknowledgment or of proof by attesting witnesses.   Act May 12, 1846, now a part of Rev. Stats. 1911, Chapters 2 and 3, Title 118.   Other exceptional "proofs" of the latter nature are provided for, but the fact that a deed may be legally authenticated, although it is not acknowledged at all, if it is properly proved by attesting witnesses before the right official, is enough to show that, when the law gives effect to statements of adoption that are either acknowledged or else authenticated in the manner that deeds are required to be as a predicate for recordation, it speaks of a class of instruments that while they may, need not be accompanied by privy examination.   For that kind of examination, requiring the personal appearance of the married woman before an officer, is plainly impossible in the case of proof by witnesses because there the signer of the instrument never goes before any officer, but the appearance is by the witnesses alone.   Rev. Stats., 1895, Arts. 4622-4628; Rev. Stats., 1911, Arts. 6806-6812.

It follows that the intention of the law was not to require a privy examination of the adopter and that either proof by witnesses or ordinary acknowledgment was considered sufficient authentication.

The next of the certified questions has reference to the sufficiency of a cross-action which alleged an adoption, like the one just discussed, of the defendant, Mrs. Chapman, during her childhood, by Mrs. Mary Doud, a married woman.   The averments are upon two grounds—compliance with the statutes upon the subject, without joinder of the husband or privy acknowledgment; and, in the alternative, what is contended to be an "equitable adoption" arising through acts, promises, etc. The question is:

3.  "Did the trial court err in sustaining the general demurrer to Mrs. Chapman's cross-action?"

Since the ground of adoption under the statutes has been held sufficient, an affirmative answer may be given to this ques-

tion, which obviates any examination of the alternative allegations.

In passing from this subject it may be well to add that the authorities that have been cited from other jurisdictions have not been helpful because of the differences in the wording, history and purpose of their statutes. So far as has been found, the Texas mode and theory of adoption is without a parallel.

The action was one of trespass to try title and for partition. The fourth of the certified questions arises over the point of common source, and has no relation to what has already been written, except that it is argued by plaintiffs in the suit that the same person who signed the adoption instrument, Mrs. Mary Doud, was shown to be such common source. They claimed in their petition that they were her heirs and entitled to undivided interests in the property involved in the suit. But the trial court instructed a verdict in behalf of three of the defendants for all of the land, because it considered that plaintiffs' contention in this regard had not been proved.

The exact question, as certified, is:

4. "Did the trial court err in holding that the plaintiffs had failed to establish that they and the said defendants were claiming the property sued for under a common source of title so as to authorize them to recover such interest therein, if any, as they may have inherited from said Mary Doud."

The Court of Civil Appeals certifies, and it is therefore assumed, that all of the tracts sued for by plaintiffs were community property of Mary Doud and her husband, John Doud, excepting tract 5, which was the separate property of Mary. The wife died leaving the plaintiffs and others as her heirs, but none of the plaintiffs were her children. Nor were they any blood kin to John. It is apparent, therefore, that John inherited the whole community interest of Mary upon her death and that plaintiffs could not share in it as heirs, which, as shown by the certificate, was the only right proved by them.

Because plaintiffs in this state of the case can only be interested in tract 5, the instructed verdict against them as to the community tracts was right; and the investigation as to whether common source of title was shown will be confined to this remaining parcel, which was awarded to defendant, N. Wood. Reference to the other lands need only be made where the facts relative to them bear upon this subject, and only a summary of the evidence that is given and referred to in the certificate will be necessary:

During the marriage of John and Mary Doud the six tracts

were deeded by various persons, five of them, including this tract 5, to Mary Doud as grantee, and a sixth to both John and Mary Doud as grantees. The deed to tract 5 contained recitations making the land covered by it the separate property of Mary. Omitting consideration of the adoption, because that has thus far been only alleged and not proved, this married couple, as already stated, had no children and each of them died intestate on dates about two months apart—Mary first, leaving as her heirs her husband, her sister, Rhoda Ridgeway, and some other collaterals, among them plaintiffs; and afterward John, leaving as his sole heir his sister, Lucy Thomsen.

In the same year and about eight months after the death of John, this sister of his and Rhoda Ridgeway, the sister of his deceased wife, exchanged some deeds, a stranger to the blood of each by the name of Hamilton, being joint grantee in one of them. This party represented Rhoda as her attorney in the present litigation about a year later; but his capacity at the time of these transactions was not shown. The deeds were three in number and bore identical dates. Each recited as a part of its consideration that it was "for the purpose of partitioning the estate of John and Mary Doud."

By one of these partition deeds, Rhoda Ridgeway conveyed to Lucy Thomsen tracts 1, 2, 3 and 4 (which the Court of Civil Appeals holds were community property of the married couple, and which would therefore legally have gone to Lucy by descent), describing the tracts separately by metes and bounds, and continuing in each case, "and being the same land conveyed in deed * * *" proceeding to describe by grantor, grantee, date, and book and page of record, the exact deed by which Mary, or Mary and John, had acquired each particular tract in the first place. By a second one of these contemporaneous partition deeds—the one involving the tract now under investigation—the direction of conveyance was reversed: Lucy Thomsen conveyed an undivided three-quarter interest to Rhoda Ridgeway and an undivided one-quarter interest to Hamilton, the stranger already mentioned, in tract 5 (the instrument reciting, and the Court of Civil Appeals holding, that the premises were the separate property of this Rhoda's deceased sister, Mary Doud). In the exact manner of the other partition deed, this one described the tract covered by it and recited the original deed into Mary Doud that "conveyed" to her this particular property. By the third of the contemporaneous partition deeds Lucy Thomsen conveyed to Rhoda Ridgeway, as sole grantee, tract 6 (which the Court of Civil Appeals finds was the community property of the married couple). After the metes and bounds

of it, is no statement, as in the other cases, that the tract had been "conveyed" to Mary Doud, but only that it was one-half of the land "described" in the original deed to Mary Doud.

There is additional evidence to show that, at about the date of these three partition deeds, after the death of John Doud, the two women that have been mentioned, divided all of the land that had been acquired by this married couple, by means of deeds, and that Rhoda "got in the division" only one piece, that is, tract 5, which under the second deed above described was conveyed to her and Hamilton by Lucy, whereas Lucy "got" all the rest of the tracts, but gave one of them to Rhoda which the latter had theretofore lived upon for twenty years under claim of gift from John.

Tract 5 was subsequently conveyed by Rhoda and Hamilton to N. Wood, and, as already stated, it was awarded to him in the judgment and is the property now in controversy. The deed to Wood by way of "consideration" read that it was subject to two vendor's lien notes * * *" (giving the correct principal amounts) "being fully described in a deed * * *" (describing exactly by date, parties, book and page of record the second of the partition deeds above mentioned, that is, the one from Lucy to Rhoda and Hamilton).

As to this tract from the standpoint of common source the foregoing, which is all of the evidence, constitutes a sufficient predicate from the viewpoint of common source of title, for conclusions to this extent:

A married couple had a number of pieces of community property which, on the death of the wife, the husband inherited and which, on his death, his sister inherited. But on the death of the wife she left one tract of land as her separate estate; and this her own heirs inherited, among whom was one of her sisters (in addition to plaintiffs). After the death of the husband, his sole heir, that is, his surviving sister, and this heir and surviving sister of the wife partitioned the estates of the deceased couple and divided the constituent property between themselves, exchanging deeds whereby the former community lands were vested in the husband's sister, excepting one parcel which, under circumstances of a claim of gift and long possession, was conceded to the wife's sister and whereby the former separate estate of the wife was vested in the wife's sister to the extent of a three-quarter interest and in a stranger, who about a year later appeared as her attorney in the present litigation, to the extent of a one-quarter interest, this deed reciting in effect the deed whereby the tract had been originally conveyed

to the wife as her separate property. The defendant Wood claimed this last tract under the latter partition deed. The plaintiffs claimed and proved definite interests as heirs of the deceased wife (in addition to her sister who has just been mentioned).

If the deceased wife was, as to any definable interest in this tract, the common source of title, the plaintiffs, who proved that they were her heirs and were entitled to particular shares of whatever estate she left, were due a recovery to that extent, since there was no proof of a superior title, and in such event the trial court erred in instructing a verdict and giving judgment for the whole of the tract in favor of defendant Wood.

The inference arises from the evidence that the vendees in the partition deed to tract 5 claimed through a previous conveyance of that parcel to the wife as her separate estate, and that Wood in turn, expressly taking through the partition deed, made a like claim as his source of title. The recitations and references in his deed and in that of his predecessors assert a complete chain of title extending from the wife to Wood. That conclusion is moreover strengthened by the circumstances and considerations of the partition.

The principles of common source obtain in an action of the present character and without regard to whether the deeds under which defendant claims are legally operative to convey the whole interest, or any interest, in the land or not. The "claim" of title to the estate, or a part of it, under a common source is the important and decisive element and it may be established by inferences from recitals or otherwise, as well as by more positive facts. Burns v. Goff, 79 Texas, 236; R. S., Art. 7749; Gilmer v. Beauchamp, 40 Texas Civ. App., 125, 87 S. W., 907; Smith v. Davis, 18 Texas Civ. App., 563, 47 S. W., 101.

As there was evidence that defendant Wood claimed the whole title to tract 5 under the deceased wife, and that plaintiffs claimed specific undivided interests in such tract by reason of being her heirs, the trial court was not justified in taking the view that common source of title had not been established, and consequently in directing the jury to return a verdict awarding this piece of land to Wood.

The remaining question that is certified is—

5. "Did the trial court commit reversible error in refusing plaintiffs permission to withdraw their announcement of ready and in refusing to continue the case to enable them to attempt to deraign title from the State?"

Just before giving the instructed verdict, the judge intimated

that he would take that course because a common source of title had not been established; and the plaintiffs sought the continuance in the manner and for the purpose stated in the question. This is all that is shown upon the subject.

While it will be conceded that the spirit of our system of procedure would dissuade a trial judge from refusing a continuance in order merely to make one party take the consequences of a misstep or oversight in practice or to give to the other the theoretical deserts of a bare tactical or strategic advantage, nothing of that nature is shown or is at all perceived in this case; and there is no reason to believe here but that the judge ruled as he did because of some unfair and substantial injury that the granting of the motion would have caused the defendants or the business of the court or by reason of some such consideration having reference to the administration of real justice. Most of that was within his final control. In order that the refusal of a non-statutory continuance, like the one here involved, may be revised on appeal, it must appear to the appellate court that the discretion of the trial court in such a case has not been exercised or else has been wrongly used. Nothing of the sort can be discerned, in the present instance, from either the certificate or the record.

The answers that are deemed proper in response to the certified questions are summarized:

To the first question: The joinder pro forma by the husband in an instrument of adoption by a married woman is not essential under the provisions of R. S., 1925, Arts. 1 and 2.

To the second question: Nor is the privy examination and acknowledgment of such an instrument by the adopter, essential.

To the third question: The trial court erred in sustaining the general demurrer to the cross-action which set up such an adoption.

To the fourth question: It erred in holding that plaintiffs had failed to establish that they were claiming definite interests and the defendant Wood was claiming all the estate in tract 5 under a common source of title so as to give them a right to have that part of the case submitted to the jury.

To the fifth question: It did not commit reversible error in refusing the continuance.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton*, Chief Justice.

ON MOTION FOR REHEARING.

MR. JUDGE SHORT delivered the opinion of the Commission of Appeals, Section B.

We have given consideration to the three motions for rehearing filed in this case respectively by the complaining parties, and being unable to discover anything new in any of them or any material issue necessary to a proper disposal of the certified questions which have not been given due attention in the original opinion, we recommend that the motions be overruled.