[Civ. No. 13908.   First Dist., Div. One.   Dec. 3, 1948.]

Estate of ALCIE C. GRACE, Deceased.   GRACE MUL-
THAUP, Appellant, v. RUBY HORN, Respondent.

Stephen D. Maffini for Appellant.

Cecil Mosbacher for Respondent.

BRAY, J.—Appeal by Grace Multhaup from an order revoking letters of administration previously issued to her in the estate of Alcie C. Grace, deceased, and issuing letters to respondent Ruby Horn.

The case is before this court on an agreed statement of facts. While the specific issue to be determined is whether appellant or respondent has a prior right to letters of administration, such issue is based upon the determination of the effect of the adoption statutes of Texas in 1894.

Respondent Ruby Horn is the daughter of the predeceased brother of the decedent Alcie C. Grace. Appellant Grace Multhaup is the daughter of the predeceased Edna Alice Coleman, also known as Edna Alice Cobman. The latter is the person who it is claimed was adopted by Alcie C. Grace and her predeceased husband Riley Columbus Grace. It is the legal effect of that so-called adoption that is in question here.

On December 18, 1894, said Alcie C. Grace and Riley Columbus Grace executed and recorded in the county of Collin, State of Texas, a certain document reading as follows:

"R. C. GRACE & WIFE

"To: Adoption

"EDNA ALICE COBMAN

"The State of Texas ⎱ Know all men by these presents:
"COLLIN COUNTY ⎰ That we, Riley Columbus Grace and Alcie C. Grace, both resident citizens of Collin County, for the love and affection we each bear Edna Alice Cobman, and for the purpose of adopting said Edna Alice Cobman, as the legal heir of each of us, do hereby adopt and solemnly declare that said Edna Alice Cobman is and shall be our legal heir and from this time henceforth our child, and a member of our family, with all the rights and privileges as if born to us.

"It is further our desire that she shall bear the name of Edna Alice Grace.

"Given under our hands and seals this the 17th day of December, A. D. 1894.

"R. C. Grace
"Alcie C. Grace."

The instrument was properly acknowledged, and was drawn in conformity to the following statute then in force:

"Title 1 — Adoption

"Vernon's Sayles' Texas Civil Statutes (1914)

"Article 1. 'Any person wishing to *adopt another as his legal heir* may do so by filing in the office of the clerk of the county court of the county in which he may reside a statement in writing, by him signed and duly authenticated or acknowledged, as deeds are required to be, which statement shall recite, in substance, that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office. (Act Jan. 16, 1850, pp. 36, 81; P. D. 30.)'

"Article 2. 'Such statement in writing, signed and authenticated or acknowledged, and recorded as aforesaid, *shall entitle the party so adopted to all the rights and privileges*, both in law and equity, *of a legal heir of the party so adopting him*; provided, however, that if the party adopting such heir have, at the time of such adoption, or shall thereafter have, a child begotten in lawful wedlock, such adopted heir shall in no case inherit more than one-fourth of the estate of the party adopting him. (P. D. 31.)' " (Emphasis added.)

The Graces at no time had any other child, either natural or adopted. Shortly before February 17, 1902, the Graces moved to California, bringing with them Edna, who was still a minor. She assumed the name Edna Alice Grace and lived with the Graces until her marriage in 1908. All three of these persons remained domiciled in California until their respective deaths, Riley in 1923, Edna in 1937, and Alcie in 1947. Edna is survived by three children—Grace Multhaup (appellant), John S. Beringer, and Herbert R. Clarke. On July 11, 1947, Grace Multhaup qualified as administratrix of the estate of Alcie C. Grace, having been appointed on the theory that she was the daughter of a predeceased daughter of Alcie. No notice of the filing of her petition for letters was given to Ruby Horn or any other of Alcie's blood relatives.

On December 23, 1947, respondent filed a motion and petition to vacate the order appointing appellant administratrix and asked for the appointment of herself, claiming that as she is the daughter of Alcie's predeceased brother she had a prior right to letters. After a hearing, contested by appellant, the court held that the Texas statute above set forth did not give an adopted person the legal status of a child of the adopting parents, nor did such adopted person acquire any rights through such adoption, to be represented by her heirs in the distribution of the adopter's estate. Therefore, as she did not

have any right to inherit, she had no right to letters superior to that of respondent, one of the nearest blood relatives.

Appellant contends: (1) that the Texas statute of adoption did give the adoptee the right to be represented by her heirs in the adopter's estate; and (2) that, if it did not, the document signed by the adopters constituted an agreement to adopt, enforceable in California.

### EFFECT OF TEXAS STATUTE

It is well settled in California that ''The *status* of an adopted child is determined by the laws of the state in which the adoption was effected, but the rules of inheritance as to personal property are to be determined by the laws of the state where the decedent was domiciled at the time of death and as to real property the rules of inheritance are to be determined by the laws of the state in which the realty is situated.'' (*Estate of Hebert,* 42 Cal.App.2d 664, 665 [109 P.2d 729].) Apparently the estate consists of $2,000 in cash, and hence the rules of inheritance would be those of the domiciliary state, California. In other words, here the question whether appellant had ''the capacity'' to inherit personal property in California from the adopting parents of her mother is determined by the laws of Texas, but, if she had the *capacity,* whether she had the *right* to inherit is determined by the laws of California. In *Estate of Tibbetts,* 48 Cal.App.2d 177 [119 P.2d 368], in determining whether a child adopted in Massachusetts was a ''lineal descendant'' of the adopting parent under California law, the court held that the Massachusetts statutes of adoption were material for the purpose of determining whether the child attained such *status* by virtue of the adoption. If she had the *capacity,* she had the *right* to inherit here, as in California the rule is that ''the children of the *adopted child* take by inheritance *from the adopting parent* as issue of such adopting parent.'' (*In re Darling,* 173 Cal. 221, 225 [159 P. 606]. See *Estate of Winchester,* 140 Cal. 468 [74 P. 10], and *Estate of Smith,* 73 Cal.App.2d 291 [166 P.2d 74].)

The Texas cases construing the adoption statute in question hold that the child of a deceased adopted child cannot inherit from the adopting grandparents. *Harle* v. *Harle,* 109 Tex. 214 [204 S.W. 317, 15 A.L.R. 1261], held in effect that in Texas, a child of a deceased child inherits directly from its parent and not through representation of the parent. In

other words, Texas laws of succession do not recognize the right of representation, but only blood relationship.

As said in *Wooley v. Shell Petroleum Corp.*, 39 N.M. 256 [45 P.2d 927, at p. 931] : "While adoption is provided for in Texas, it does not involve any responsibility for the education or the support of the child, or any right to its obedience or service. It does not relieve the natural parent of any of his obligations. It merely designates the child as heir." To the same effect, see *Harle v. Harle, supra* (204 S.W. 317) holding that an adoption in Texas (at the time in question here) did not give the adopted person the legal status of a child. In *State v. Yturria*, 109 Tex. 220 [204 S.W. 315, L.R.A. 1918F 1079], the court held that descendants of children adopted under the Texas law were not "lineal descendants" of the adopting parents and therefore not included in the exemption of inheritance taxes to which lineal descendants were entitled. The court said that the adoption statute deliberately avoided the use of the word "child" and discriminatingly used the term "legal heir." In *Bell v. Thomsen* (Tex.Com.App., 1925), 273 S.W. 1109, in holding that a child adopted under the Texas law could be pretermitted by will, the court stated that the adoption did not induct the child into the family. In *Kurtz v. State* (1925), 102 Tex.Cr. 316 [277 S.W. 685], the court held that the adopting father could not legally be charged with failure to provide for the adopted child, and that the only purpose of the statute was to make the child the heir of the adopter. In *Shaver v. Nash,* 181 Ark. 1112 [29 S.W.2d 298, 73 A.L.R. 961], the court differentiated the effect of an adoption under the Arkansas law from one under the Texas law, and held that the status given the child by a Texas adoption did not give the child the right to inherit land in Arkansas as a pretermitted child under the adopting parent's will, although a child adopted under the Arkansas law could so inherit. In *Hoch v. Hoch* (Tex.Civ.App., 1942), 162 S.W.2d 433, 434, the court stated: "In numerous cases our Supreme Court has held that the earlier statutes of adoption made adopted children no more than legal heirs of the estates of their adoptive parents, and did not give them the status of children born in lawful wedlock . . ."

To overcome the holding in these cases, appellant cites *Martinez v. Gutierrez* (Tex.Com.App., 1933), 66 S.W.2d 678, and *Wolfe v. Buckley,* 52 Tex. 641 (1880). In the Martinez case the question was whether a child adopted in Mexico in 1851, in accordance with its laws, could inherit from the adopt-

ing parent land in Texas in the same way and to the same extent that a child adopted in Texas could inherit. It was contended that because the laws of Mexico as to inheritance by an adopted child were more restricted than those in Texas, and the method of adoption different, the child was not entitled to inherit in Texas. The court went on to hold (p. 682) that in Mexico the child "became the legally adopted son of the adopting parent, with the capacity or qualification to inherit from her. Such status could exist under the laws of Texas, for its act of 1850 provided for adoption and made the adopted child the legal heir of the one so adopting him or her. The status and capacity arising from the adoption in Mexico, therefore, were not inconsistent with the law or policy of Texas." It also stated (p. 682) "that, notwithstanding the differences between the law of Mexico and the law of Texas as to the method of adoption, and although under the law of Mexico the right of an adopted child to inherit may have been different from and more restricted than the right of inheritance given to an adopted child by the Texas law, the status of the child adopted in Mexico, with its qualification or capacity to inherit, should be respected and recognized by the Texas courts, and the child accorded the right to inherit land in Texas in accordance with the laws of this state, provided the adoption was in fact authorized by, and accomplished in compliance with, the laws of Mexico." There is nothing in this case to support the contention that a Texas adoption makes a child more than a legal heir. Its effect is that a child adopted elsewhere has, in Texas, the same right to inherit as a child made a legal heir by a Texas adoption.

In the Wolfe case the question was whether a person adopting a child under the Texas law could homestead her property as "the head of a family" under the Texas homestead law. The court stated (p. 650) : "It does not, in this case, become necessary to determine the legal effect of such adoption, further than that, if made in good faith, it would create such legal relation of parent and child as would constitute a family as contemplated by our Constitution and laws." This case, treating a child as a member of the family for homestead purposes, is not an overruling of the other cases herein set forth, which hold that the child does not become a member of the family for other purposes, or generally.

It is unnecessary to consider the cases cited by appellant upon the proposition that a child adopted in another state,

who obtains the status of a child of the adopter (as distinguished from a legal heir), inherits in California under our laws of succession, as there is no question but that that is the law.

Under the Texas statute and the construction given it in the cases, it is not merely a question of the Texas laws of inheritance. It is a question of status, and one where by reason of the then attitude of Texas towards adoption, a child became, not as in California, the same as if born to the adopter, but merely a legal heir, and being only such, her descendants cannot inherit from the adopter. This situation has been changed, for in 1907 Texas amended the statute so as to provide a method for full adoption of a child.

## CONTRACT

■ A different situation, however, arises as to the effect of the declaration of adoption and the offer therein, which, on acceptance, became a contract.

The language used in it is significant. The Texas statute merely requires a person desiring "to adopt another as his legal heir" to execute a statement which "shall recite, in substance, that he adopts the person named therein as his legal heir." But the statement here did more than that. After reciting that she is to be the legal heir of the signers, it states: "and from this time henceforth our child, and a member of our family, with all the rights and privileges *as if born to us*." (Emphisis added.) While the State of Texas had no statute providing for adoption other than as a legal heir, as distinguished from a member of the family for all purposes, the language used here was, in effect, an offer by the signers to the child to give it all the rights and privileges as if born to them, if it would become a member of the family. With such an offer in existence, they brought the child, while still a minor, to California. The child, by living with them as a member of the family, accepted the offer. A portion of that acceptance took place in California. Thus, partially, at least, the contract was made here. Moreover, it is obvious that while the contract did not state in so many words where it was to be performed, it necessarily would be performed wherever the Graces might take the child, at least during its minority. Section 1646 of the Civil Code provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." "The law of the place of performance

determines the manner and method as well as the legality of the acts required for performance.'' (Rest. of the Law, Conflict of Laws, p. 437.) ''Irrespective of the general rule that the law of the place of the making governs the validity of a contract, the courts, in their effort to protect and promote the welfare of the child, have given effect to a contract to adopt, where it has been fully performed on the part of the child, although it was invalid under the laws where it was made.'' (2 C.J.S. 395.)

Some meaning must be given to the language used. It is apparent that the signers offered the child something more than being their legal heir, and something more than just being a ''member of the family.'' That something more was ''with all the rights and privileges as if *born* to us.'' (Emphasis added.) The reasonable interpretation of ''with all the rights and privileges as if born to us,'' is that the Graces were offering the child the right to inherit and to have her offspring inherit, just as if she was of their blood. This offer she accepted by continuing to live with them as their child.

It would seem that such a contract was void in Texas, as against public policy. As said in *Wooley* v. *Shell Petroleum Corp., supra* (45 P.2d 927), at page 930: ''It seems to have been so declared in *Hooks* v. *Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1118, 15 A.L.R. 216. While counsel have ably argued to the contrary, we feel constrained to accept this decision as controlling evidence that the contract of 1892 was void as matter of Texas law, and that if the relief were sought in Texas, it would be denied.'' However, it is not void in California, as contracts to adopt and to provide for inheritance, and even to adopt, where joined in by the natural parents, have been upheld.

In *Steinberger* v. *Young,* 175 Cal. 81 [165 P. 432], an oral contract between a child and its stepfather and the adopting parent to adopt the child and make it the heir of the adopter was upheld. In *Furman* v. *Craine,* 18 Cal.App. 41 [121 P. 1007], a similar written agreement, made with the parents of the child, was upheld. In *Johnson* v. *Superior Court,* 102 Cal.App. 178 [283 P. 331], the court supported a similar oral agreement made with the aunt of the child on his behalf. In *Wilson* v. *Wood,* 69 Cal.App. 552 [231 P. 1010], an agreement for adoption was made in Michigan with the father of the child. Adoption proceedings were taken in that state which, under the decisions of the Supreme Court of that state, the California court held to be void. The court treated

the agreement as valid, but pointed out that in that particular contract there was no promise of inheritance that prevented the adopting parents from excluding the adopted child by will from the adopter's property, just as they could do were the child their natural one. Contracts, too, to provide for inheritance have been upheld here. See *McCabe* v. *Healy*, 138 Cal. 81 [70 P. 1008], where an oral agreement with the parents to leave all the promisor's property to their son and his nephew was held valid. And there is nothing in our adoption statutes that would prohibit an agreement to provide for inheritance by the heirs of the person designated, even though a contract to adopt, not joined in by the natural parents of the child, as distinguished from a contract for inheritance, might be void here. See *Estate of McCombs*, 174 Cal. 211 [162 P. 897], to the effect that the power to adopt children is a creation of statute, and, as the mode is the measure of the power, there must be a strict compliance with the statute.

In *Wooley* v. *Shell Petroleum Corp.*, *supra* (45 P.2d 926), Mr. and Mrs. Fowler, while living in Texas, agreed with the natural father of two minor girls to legally adopt them and to leave them such property as the Fowlers owned. No adoption proceedings were had, but the children were reared as the children of the Fowlers. The Fowlers and the girls moved to New Mexico, where the same relationship continued. In considering this agreement the New Mexico court first held[1] that the agreement was void under Texas law, and that even in New Mexico "this unperformed promise [did not] make them children by adoption." (P. 931.) It then held that the contract was more than one for adoption—it was deemed to be a promise in behalf of the children to obey and serve the Fowlers, in exchange for a promise by the latter to support the children and to leave all their property to them (this is the situation here) ; and that such a contract was valid not only in New Mexico but in Texas itself, referring to the cases of *Jordan* v. *Abney*, 97 Tex. 296 [78 S.W. 486], and *Hooks* v. *Bridgewater*, 111 Tex. 122 [229 S.W. 1114, 15 A.L.R. 216]. The court held that the relief in this character of cases "is generally classified as specific performance of contract. There are analogies to that equitable remedy, but the classification is not accurate. A specific performance of a contract to adopt is impossible after the death of the parties

---

[1] (See pp. 9-10.)

who gave the promise. Equity was driven to the fiction that there had been an adoption. That fiction being indulged, the case was not one of specific performance. It remained merely to apply the statutes of descent and to decree the succession. . . .

"The weakness of this class of cases, considered as resting upon a valid enforceable contract, is readily apparent. The Texas courts do not stand alone in having discovered it. Cf. *Mahaney* v. *Carr*, 175 N.Y. 454, 67 N.E. 903. Its strength lies in inherent justice. Equity, abhorring injustice, and having its origin in the inadequacy of legal remedies, and possessing powers all its own, has developed the remedy, denominating it specific performance; a remedy, the granting or denial of which rests in sound discretion. It is freely used to prevent fraud, never in aid of it. *Winne* v. *Winne*, 166 N.Y. 263, 59 N.E. 832, 82 Am.St.Rep. 647; *Lee* v. *Bermingham*, 199 Ill.App. 497." (Pp. 931, 932.)

One of the girls was still living, the other dead. Surviving the latter was her father. The court held that the Fowlers' property should go to the living child and the father as heir of the deceased child.

To the same effect, namely, that contracts to adopt will be specifically enforced upon equitable grounds, see *Barney* v. *Hutchinson*, 25 N.M. 82 [177 P. 890], and the cases therein cited. In *Owens* v. *McNally*, 113 Cal. 444 [45 P. 710, 33 L.R.A. 369], the same principle was applied to an oral agreement made in Michigan by an uncle with the parents of an 18-year-old-girl that if she would live with and care for him he would give or bequeath to her all his property at death.

Likewise in *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 P. 728], an oral contract made in Missouri with a father on behalf of his infant son, by which Mr. and Mrs. Rogers agreed to rear the child as their own and to have him succeed to the same share in their estate as their natural children, was held to be specifically enforceable.

In *Logan* v. *Lennix*, 40 Tex.Civ.App. 62 [88 S.W. 365], the court was considering a document similar to the one here. It provided that the child, in addition to becoming the legal heir of the adopter, was to be entitled to all privileges as fully as if she were a child legally begotten by the adopter. The court held that this document gave the child no more rights than the statute did; that the child was still only the legal heir, and no more, of the adopter. However, the court

was considering the question of whether the adopter could disinherit the adopted child, and in holding that he could, stated that such a document did not place the adopted child in a position more advantageous than that of a legal heir.

In *Hooks* v. *Bridgewater, supra* (111 Tex. 122 [229 S.W. 1114, 15 A.L.R. 216]), the court refused to uphold an agreement between a father of a minor child and one Davis, who agreed to rear the child and leave him his property. Until late years Texas has been opposed to adoptions in the true sense of the word, and to agreements of this kind. However, the legality of the agreement is to be determined, not by Texas, but by California law.

The only difference between the cases upholding agreements to adopt and the one at bar is that in those cases the agreement to adopt or to bequeath property was made with the parents or other relative of the child, while here, the agreement was made only with the child. This fact might be important on the adoption feature of the agreement, but makes no difference on the agreement as to intestate succession. An agreement to adopt, not consented to by the parents, might not be enforceable in California, but an agreement to provide for inheritance by the child's heirs, made with the child, is enforceable. In this respect it makes no difference whether the agreement is with the child or with someone for its benefit. The agreement is *for the benefit of the child,* not of the parents or persons making it. As said in *Wooley* v. *Shell Petroleum Corp., supra* (45 P.2d 927), at page 931, the contract is to be deemed a promise in behalf of the child to obey and serve the foster parents. The consideration for the agreement received by the foster parents, whether the agreement is made for or by the child, is the child's living with and acting as their natural child.

"A statutory adoption by deed does not preclude the parties incorporating into the deed any terms upon which they may agree, in the absence of any controlling provision of the statute. Accordingly, while mere recitals of consideration in the deed impose no more burdens and confer no more rights than the statute itself gives, yet covenants contained in the deed will be enforced by the courts." (2 C.J.S. 446.)

Thus, as a matter of contract, appellant has the right to inherit from the adopting parents through her mother by right of representation. Hence she is entitled to letters of administration of the estate of the deceased grandmother, in

preference to a child of a predeceased brother of the grandmother.

The order appealed from is reversed.

Peters, P. J., and Ward, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 31, 1949. Edmonds, J., and Traynor, J., voted for a hearing.