[L. A. No. 3852. Department One.—May 9, 1917.]

MAGGIE G. STEINBERGER, Respondent, v. MILTON K. YOUNG, as Administrator of the Estate of Elizabeth B. Ross, Deceased, et al., Appellants.

CONTRACT TO MAKE WILL—SPECIFIC PERFORMANCE—ORAL CONTRACT.— An oral contract to dispose of property upon death in a particular way may, under proper conditions, be specifically enforced. Prior to the amendments, in 1905 and 1907, of section 1624 of the Civil Code and of section 1973 of the Code of Civil Procedure, it was not required that an agreement to this effect should be in writing.

ID.—PROOF OF CONTRACT—CERTAINTY REQUIRED.—To warrant specific enforcement of a contract to make a certain will, or to make a person one's heir, the proof of such contract must be clear, definite, and certain. The evidence in the present case is held sufficient to support the finding of the making of such a contract by the foster mother of the plaintiff.

ID.—FINDING—SUFFICIENCY OF EVIDENCE.—The sufficiency of the evidence to establish a given fact, even where the law requires proof of the fact to be clear and convincing, is primarily a question for

CLXXV Cal.—6

the trial court, and if there be substantial evidence to support the conclusion reached below, the finding is not open to review on appeal.

ID.—MARRIED WOMAN — AGREEMENT TO DEVISE SEPARATE ESTATE—FORMALITIES OF CONTRACT UNDER ACT OF 1850.—An agreement by which a married woman agrees to devise all of her estate, real and personal, or to have it pass upon her death to a given person, is, so far as it affects her real property, a contract "concerning or relating to the same," within the meaning of the amendment of 1862 (Stats. 1862, p. 518) to section 6 of the act of 1850, defining the rights of husband and wife, which required such a contract to be in writing, executed by the husband and wife, and acknowledged by her upon an examination apart from and without the hearing of her husband.

ID.—RATIFICATION OF ORAL CONTRACT—AMENDMENT OF SECTION 167 OF THE CIVIL CODE.—An oral contract to that effect, entered into by a married woman at a time when such restrictions upon her power to contract were in force, could be validated by a ratification made by her subsequently to the taking effect of the amendment of 1874 to section 167 of the Civil Code, which removed the restrictions upon the power of a wife to contract with respect to her separate property. The evidence in this case is sufficient to support a finding of such a ratification.

ID.—RESTRICTIONS ON MARRIED WOMAN'S POWER TO CONTRACT.—While the statute of 1850, as amended in 1862, prohibited a married woman from making such a contract, except in the prescribed mode, the restrictions went rather to the mode of exercising her power of dealing with her separate estate than to the existence of such power.

ID.—LACHES IN ENFORCEMENT OF CONTRACT—DELAY WITHOUT PREJUDICE.—A plaintiff is not guilty of laches in failing to bring an action to specifically enforce such a contract within two years after the death of her foster parent, where the evidence showed that the plaintiff believed that the foster parent had left a will giving the entire estate to her, and the action was commenced within a reasonable time after it became clear that no such will could be found, and the delay was without prejudice to the opposing parties.

ID.—PLEADING—AMENDMENT SETTING UP RATIFICATION.—An amendment to the complaint to specifically enforce such oral contract, setting up a ratification thereof, did not state a new cause of action.

ID.—CONTRACT MADE BY STEPFATHER.—A minor child of five years of age, living with her stepfather, is the real party in interest to a contract made by him, whereby a third person agreed to take and care for the child and make her such person's heir. The stepfather stood in a relation to the child which authorized him so to act in her behalf.

ID.—DECLARATIONS OF DECEDENT—ADMISSIBILITY IN EVIDENCE.—In an action to specifically enforce such contract, brought against the heirs and personal representative of a deceased person who, it was alleged, had agreed to make the plaintiff her heir, declarations of the decedent in support of the alleged contract are admissible as declarations against her pecuniary interest; declarations of the decedent tending to the contrary are inadmissible.

APPEAL from a judgment of the Superior Court of Los Angeles County.    Grant Jackson, Judge.

The facts are stated in the opinion of the court.

H. M. Barstow, Milton K. Young, Davis, Kemp & Post, Joseph Scott, A. G. Ritter, and Taylor & Forgy, for Appellants.

J. H. Merriam, Joseph L. Lewinsohn, and Hunsaker & Britt, for Respondent.

SLOSS, J.—Elizabeth B. Ross died intestate on January 5, 1910, leaving an estate of considerable value.

This action was brought against her heirs and the administrator of her estate to obtain specific performance of an agreement alleged to have been made in September, 1865, between one Halbert, plaintiff's stepfather, and plaintiff herself, on the one hand, and Elizabeth Ross, on the other, whereby Elizabeth Ross agreed that she would adopt the plaintiff, take her into her home and treat her as her own daughter, and that said plaintiff should be the heir of said Elizabeth, and on her death should be entitled to receive her property.    The stipulated consideration for these promises consisted of the surrender by Halbert to Mrs. Ross of the control and custody of the plaintiff, and the rendition by plaintiff to Mrs. Ross of the obedience, affection, and services of a daughter.    The complaint contained the necessary allegations of performance on the part of Halbert and the plaintiff, and of adequacy of consideration.    At the close of the trial, the plaintiff, by leave of court, filed an amended complaint alleging, in effect, the recognition and ratification of the agreement by Elizabeth Ross at various times.    This amendment, made "to conform to the proof," was designed to meet the claim of the defendants that Elizabeth Ross, the alleged

promisor, was a married woman at the time of the making of the alleged agreement, and that she was, under the provisions of our statutes then in force (Stats. 1850, c. 103, [p. 254]; Stats. 1858, p. 22; Stats. 1862, p. 518), precluded from making a valid contract concerning her real property, except by an instrument in writing, executed by the husband and wife, and acknowledged by the wife. The ratification relied upon was claimed to have been made after the disability had been removed by a change in the statute. A renewed promise, made after the death of her husband, was also set up.

The court found in accordance with the plaintiff's allegations, and entered judgment declaring her to be the equitable owner of all of the property owned by Elizabeth B. Ross at the time of her death, and requiring the heirs to make conveyance to her. The defendants appeal from the judgment.

One of the contentions strongly urged by the appellants is that the evidence is insufficient to sustain the finding that the contract set up in the complaint was made. It is well settled in this court that a contract to dispose of property upon death in a particular way may, under proper conditions, be specifically enforced, and that, prior to the amendment, in 1905 and 1907, of our codes (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973), it was not required that an agreement to this effect should be in writing. The subject was very recently under consideration in this court in *Monsen* v. *Monsen,* 174 Cal. 97, [162 Pac. 90], and we need only refer to the opinion in that case, and the earlier decisions there cited, for a statement of the rules of law governing the enforcement of contracts like the one here set up. The opinion in the Monsen case emphasizes the rule, often laid down in earlier decisions, that, to warrant specific enforcement of a contract to make a certain will, or to make a person one's heir, the proof of such contract must be clear, definite, and certain. Applying this rule, it was held that the contract there sought to be enforced had not been established by proof filling the measure of these requirements. We think, however, that the evidence in the case at bar is materially stronger than that presented in the Monsen case, and that, under the settled rule regarding the binding effect of findings made upon conflicting evidence, the determination of the trial court that a contract, as alleged, had been made, cannot be assailed here. The sufficiency of the evidence to establish a given fact,

even where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court (*Couts* v. *Winston,* 153 Cal. 686, [96 Pac. 357]; *Estate of Pepper,* 158 Cal. 619, [31 L. R. A. (N. S.) 1092, 112 Pac. 62]), and if there be substantial evidence to support the conclusion reached below, the finding is not open to review on appeal.

In September, 1865, Elizabeth B. Ross was living with her husband, Robert Ross, in Sierra County, in this state. Plaintiff was then a child of the age of five years. Her mother had died two months before, leaving surviving a husband, J. C. Halbert, plaintiff's stepfather. The evidence is abundant and undisputed to the effect that, at this time, the plaintiff, with the consent of her stepfather, was taken into the family of Mr. and Mrs. Ross, and that, until her marriage, which took place in 1883, she lived in that family as a member thereof. She took the name of Ross, and was treated by Robert and Elizabeth Ross as a daughter. She gave them the service and the affectionate devotion due from a child to its parents, and received from them care and nurture, as well as the best educational advantages available. On each of two occasions, when plaintiff was receiving attentions from young men, Mrs. Ross exercised a parent's right of opposing the proposed marriage, and each time her objections were heeded. When plaintiff married Mr. Steinberger, Mr. and Mrs. Ross were present, the former "giving her away." In 1884, Robert Ross died, and thereafter, until the death of Mrs. Ross, the most affectionate relations continued between the latter and the plaintiff. Gifts of real and personal property of considerable value were made by Mrs. Ross to the plaintiff. It is not contended that any formal adoption was ever made. In fact, at the time of plaintiff's entry into the Ross family, there was in this state no statutory provision for adoption. But Mrs. Ross made many statements showing that she and her husband had intended to adopt the plaintiff. There were but two witnesses who could testify directly to the occurrences of September, 1865, when Halbert gave the child to the Rosses. One of these was the plaintiff herself. She could not, of course, recall in detail what took place at this early period of her life, and did not testify to the making of any agreement. Will T. Ross, who was present on the occasion in question, testified that Mrs. Ross had asked Hal-

bert to give her the little girl.   Halbert assenting, Mrs. Ross asked her husband whether he was willing, stating that she would assume the responsibility, to which the husband replied, "All right."   Halbert handed the child over to Mrs. Ross, saying, "Maggie, here is your new mama and papa."   On the same day Mrs. Ross said to other persons, "We have taken Maggie for our own."   It is true that in this there is no statement in words of an agreement to make any particular provision for the child.   But this witness did not claim to have heard the entire conversation, and, under the circumstances, some arrangement to this end would naturally form a part of the transaction.   Mrs. Arrowsmith, who had been acquainted with Mrs. Ross from 1869, said that in that year, and in 1870, Mrs. Ross had frequently told her "that she and Mr. Ross had adopted the plaintiff and made her their sole heir.   She told me on one occasion, that they had taken the plaintiff and had agreed with her stepfather, Mr. Halbert, I think his name was, that they would adopt her and make her their sole heir."   Again in 1884, after Mr. Ross' death, Mrs. Ross had said to this witness in plaintiff's presence, referring to the failure of Ross to leave a will giving his estate to plaintiff, "There will be no such mistake as that in regard to my property; we agreed with Maggie that she should have our property, and she shall have it."   In addition to this, many witnesses testified to declarations of Mrs. Ross to the effect that Maggie (the plaintiff) would be her sole heir, "that she should receive their property whenever they died the same as if she was their own child," and the like.   The testimony of Mrs. Arrowsmith was evidence tending to show that Mrs. Ross and her husband had agreed with Halbert and the plaintiff to make the plaintiff their sole heir, and to leave her all of their property.   Whatever may be said of the weight to be given to testimony of oral declarations of decedents, it cannot be said that such testimony, supported, as it is in this case, by other evidence and by the inferences which may fairly be drawn from the entire conduct of the plaintiff and her foster parents, is not sufficient to warrant the finding of the court below.

But, as we have suggested above, it is argued by the appellant that in September, 1865, the date of the alleged contract, a married woman could not bind her separate estate, except in a particular manner prescribed by statute.   The statute

in question was entitled, "An act defining the rights of husband and wife," and was enacted in 1850. Section 6 of the act was amended in 1858 (Stats. 1858, p. 22), and again in 1862 (Stats. 1862, p. 518). Under the last amendment the section provided that the husband should have the management and control of the separate property of the wife during the continuance of the marriage; "but no alienation, sale, or conveyance, of the real property of the wife, or any part thereof, or any right, title, or interest, therein, and no contract, or power of attorney, concerning or relating to the same, and no lien or encumbrance created thereon, shall be valid for any purpose, unless the same be made by an instrument in writing, executed by the husband and wife, and acknowledged by her, as provided for in the acts concerning conveyances," etc. It further provided that personal property should not be sold, assigned, or transferred unless both husband and wife joined in the sale, assignment, or transfer. The acknowledgment referred to in section 6 was one made upon an examination apart from, and without the hearing of, the husband. (Stats. 1850, c. 101, sec. 22, [p. 251].) The decree appealed from covers real estate of large value. Clearly, an agreement by which a married woman agrees to devise all of her estate, real and personal, or to have it pass upon her death to a given person, is, so far as it affects her real property, a contract "concerning or relating to the same." In September, 1865, Mrs. Ross could not, therefore, make a contract which should form the basis for an assertion of rights against her separate real estate, unless such contract were executed and acknowledged in conformity with the requirements of the statute to which we have referred. The contract here set up was oral merely.

But, in 1874, [Stats. 1873–74, Amdts., p. 193], the amendment of section 167 of the Civil Code removed the last restriction upon the power of the wife to contract with respect to her separate property, with the single exception that an acknowledgment of her conveyance of real estate was still required to be made as provided in sections 1093 and 1181 of the Civil Code. (*Marlow* v. *Barlew*, 53 Cal. 456.) The appellants do not dispute the proposition that, from and after this time, a married woman had the power, without any writing or acknowledgment, to make the kind of contract here involved. By the amendment to her complaint, the plaintiff

alleged that after the change of the law in 1874, Mrs. Ross recognized the validity of the agreement, and "for the continuing consideration to her rendered by the plaintiff, as in this complaint alleged and shown, she approved, ratified, and adopted said agreement," and continued to receive from plaintiff the benefit of the performance by plaintiff of the obligations on her part to be performed. The court found these allegations to be true, and the finding has sufficient support in the evidence. The testimony of Mrs. Arrowsmith shows a recognition by Mrs. Ross of the binding force of the agreement of 1865, and there is abundant other evidence to show that plaintiff continued to give Mrs. Ross the obedient service and devotion of a daughter, and that Mrs. Ross accepted such performance. But, say the appellants, the contract of 1865 was void in its inception, and was, therefore, not capable of ratification. This contention, we think, cannot be sustained. While the statute of 1850, as amended in 1862, prohibited a married woman from making such a contract, except in the prescribed mode, the restrictions went rather to the mode of exercising her power of dealing with her separate estate than to the existence of such power. The Constitution of 1849 itself (art. XI, sec. 14) defined the separate property of the wife, and provided that "laws shall be passed more clearly defining the rights of the wife in relation as well to her separate property as to that held in common with her husband." Under this provision, as was said in an early case, "the capacity of the wife to hold her separate property being equal to that of the husband, or of any other individual, the same incidents necessarily attach to her capacity, as to that of the husband." (*Selover* v. *American Russian Commercial Co.*, 7 Cal. 266.) The statutory limitations upon the wife's disposition of her property were designed mainly for her own protection. The statute "does not prohibit her from disposing of, or encumbering all, or any part of her separate estate upon such terms as to her may seem proper. It does not in the slightest degree interfere with her free will. It only prescribes the mode in which she shall manifest that will. It was undoubtedly the object of the statute to provide a mode of alienation and of encumbering her estate, uniform, simple, and conclusive, which should protect both the wife and the purchaser; one that should secure entire freedom of will and action to the wife, and afford the least pos-

sible opportunity for subverting her interest through the medium of undue influence, threats or fraud. It is a beneficent provision intended for her benefit, and not as an encroachment upon her rights. And we think its obvious tendency is, to throw a safeguard around, without in any degree impairing, the *jus disponendi.*" (*Maclay* v. *Love,* 25 Cal. 367, 382, [85 Am. Dec. 133].) So, in *Love* v. *Watkins,* 40 Cal. 547, 560, [6 Am. Rep. 624], the court says that "the object of requiring the contracts of married women to be executed with certain formalities has been often held to be for her protection, and not to deprive her of any power over her estate." The contract was, therefore, one which Mrs. Ross had the power to make, although it was not, in the then state of the law, valid and enforceable unless executed in the prescribed manner. But, when the restrictions upon her mode of contracting were removed, we see no reason why she could not, by a ratification of her contract, coupled with the receipt and enjoyment of the continuing consideration, bind herself and her property. (*Brown* v. *Bennett,* 75 Pa. St. 420; see, also, *Jourdan* v. *Dean,* 175 Pa. St. 599, [34 Atl. 958]; *Pettus* v. *Gault,* 81 Conn. 415, [71 Atl. 509].) The contrary is held in two cases strongly relied on by the appellants. (*Austin* v. *Davis,* 128 Ind. 472, [25 Am. St. Rep. 456, 12 L. R. A. 120, 26 N. E. 890]; *Thompson* v. *Minnich,* 227 Ill. 430, [81 N. E. 336].) We shall not stop to inquire whether these cases are distinguishable from the one before us. It will suffice to say that, if they are not, they proceed upon a theory of the relationship of a married woman to her estate which is not in harmony with the view taken by this court of the effect of the Constitution of 1849, and the statutes passed thereunder.

If these conclusions are correct, the findings of ratification are sufficient to sustain the judgment without regard to the further finding that, after the death of Robert Ross, Mrs. Ross, upon a new consideration, agreed to leave all of her property to the respondent. We need not, therefore, inquire whether the evidence is sufficient to support this additional finding, nor need we go into the various questions which arise in connection with it, such as the applicability of the statute of limitations to an action upon the new contract.

Some further points are made, and may be briefly discussed.

It is claimed that the plaintiff was guilty of laches, in that she did not bring her action for over two years after the death of Mrs. Ross. There is evidence, however, that the plaintiff believed that Mrs. Ross had left a will giving the entire estate to her, and that she commenced her action within a reasonable time after it became clear that no such will could be found. Furthermore, the court below was justified in concluding that the delay had not prejudiced the opposing parties. Nor was the action barred by limitation. The complaint was filed within the period fixed by any of the sections of the Code of Civil Procedure relied upon by the appellants. The amendment to the complaint, in so far as it alleged ratification of the original contract, did not set up a new cause of action.

We see no force in the contention that the contract was invalid because made with the stepfather, Halbert, who, it is claimed, had not legal control over the child. The contract was made primarily for the benefit of the child herself. She was, if not the formal party, the real party in interest, and Halbert stood in a relation which authorized him to act in her behalf.

The appellant assigns as error certain rulings on the admission and rejection of evidence. The only ones which call for particular notice are those relating to the declarations of Mrs. Ross. The declarations offered by the plaintiff, as a part of her case, were properly admitted as the declarations of a decedent against her pecuniary interest. (Code Civ. Proc., sec. 1853.) On the other hand, the court was right in rejecting evidence offered by the appellants to show declarations of Mrs. Ross in favor of the position assumed by the appellants, who claim under her in this litigation. It is sufficient, in support of the correctness of both classes of rulings, to refer to *Rulofson* v. *Billings,* 140 Cal. 452, [74 Pac. 35].

The judgment is affirmed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.