[Civ. No. 26. Fourth Appellate District.—November 26, 1929.]

CHRISTIAN JOHNSON, Petitioner, v. SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

180

W. J. Mossholder and Harrison G. Sloane for Petitioner.

F. M. Downer for Respondents.

BARNARD, J.—Original petition for writ of *mandamus.*
This is a petition asking that a writ of *mandamus* be issued to compel the Superior Court of San Diego County and Honorable L. D. Jennings, Judge thereof, to proceed to hear and pass upon a petition for distribution in an estate.

It appears from the petition and the answer and return thereto, that Edward Johnson died in September, 1927, leaving a will disposing of about one-half of his estate to various legatees, while as to the other half of said estate, he died intestate; and that all proceedings in the regular course of probate were had and taken in said court, including the filing of a final account and petition for distribution, and the estate was fully ready to be closed, except as herein set forth. That in May, 1929, after the petition for distribution was filed but before the same was heard, one Charles Erickson filed a complaint in the Superior Court of said county, which he denominates a complaint for specific performance and other equitable relief, and in which he alleges that he was born in Chicago, Illinois, on May 26, 1873; that his father died in 1876, and his mother died in 1877, leaving him an orphan; that for some time prior to the death of his mother, and for a short time afterward, plaintiff was cared for by an aunt; that soon after the death of his mother, plaintiff, then an infant of about four years of age, was given by his aunt into the custody and control of the said Edward Johnson and his wife, who then and there agreed with the said aunt, in consideration of the surrender of plaintiff to their control and custody, and the release of all claims upon her part, that they would receive plaintiff into their home and legally adopt him as their own

child, educate and maintain him, and give him the same rights and privileges as a natural child, including the right of inheritance. That pursuant to said agreement, plaintiff lived with the Johnsons as their son, and for many years was known, and is still known to many people, as Charles Johnson; that until he grew to young manhood, plaintiff rendered unto the said Johnsons all the duties and devotion due parents from their children, and was in all respects treated as their natural son; that he was led to believe, and did believe, he was their legally adopted son; that because of this belief, after he reached the age of maturity he rendered to them the duties and obligations of a son to his parents; that he has fully performed the contract made on his behalf by his said aunt, but that no legal steps have ever been taken to adopt him according to law; that after paying all bequests under the will of said Edward Johnson and all costs and expense of administration, there remains a residue in cash and certain real property; that said Edward Johnson left neither issue, wife, father nor mother surviving him, but left a brother and sister and certain descendants of deceased brothers and sisters. Plaintiff prays that the agreement between the said Edward Johnson and the aunt of plaintiff be specifically enforced, and that he be adjudged to be the owner of all the property of Edward Johnson, deceased, remaining in the control of the executor and not disposed of by will; that the defendants be adjudged to hold the title thereof in trust for the plaintiff, and be required to convey to the plaintiff their several interests in said estate; that in the event of their failure to do so, the clerk of the court be authorized to execute proper conveyances thereof; and that the executor be ordered to deliver to plaintiff all funds in his hands belonging to the estate, and that he be restrained from paying or delivering any of the funds or property of said estate to any of the defendants, pursuant to any decree of distribution which has been made, or which may be made. The executor is made a defendant, with allegations that if not restrained he will distribute and pay over to the other defendants the residue of said estate.

Before the decree of distribution in the estate of Edward Johnson came on for hearing one of the attorneys for the said Charles Erickson filed, in the matter of said estate, an

affidavit setting forth the fact that said suit by Charles Erickson had been filed; that the object of the action is to obtain a decree for specific performance of a contract of Edward Johnson, deceased, to adopt the plaintiff and to award that portion of the estate of deceased, amounting to approximately $40,000, to plaintiff; and that until the determination of said action no decree of distribution can be made in this estate. It further appears that when said petition for distribution came on for hearing before the respondent court and judge, evidence was offered to show the persons who, by law, are entitled to the distribution of said estate; that said court and said judge declined and refused to pass upon such evidence, or to make any order settling such question or decreeing distribution; that said respondents refused and still refuse to proceed to ascertain the heirs of said deceased, or distribute the residue of the property to the heirs, or those entitled thereto.

The real issue involved in this matter is whether or not the pendency of such an action in equity, which is in fact one to declare the status of plaintiff to be that of an adopted child, empowers the Superior Court sitting as a court of probate, to postpone distribution of an estate until said action has been decided. As bearing upon this main issue, four questions are raised and argued, which we will take up in order.

The first question is whether the complaint in the suit filed by said Charles Erickson shows any right of action at all. The petitioner argues that the complaint is fatally defective, in that it shows upon its face that it is barred by laches; that some fifty-two years had elapsed since the alleged making of the contract; that some seventeen years elapsed before the plaintiff reached maturity, after which adoption was no longer possible, and more than thirty years have elapsed since plaintiff became of age; and that the action was begun after all other interested parties were dead. The respondents answer this contention by citing *Furman* v. *Craine*, 18 Cal. App. 41 [121 Pac. 1007]. In this case the court held there was no laches in bringing the suit, since no cause of action accrued until the death of the foster parent, and the suit was brought within two years from that date. We are not satisfied that that decision is con-

trolling in this case, since that case was one where the agreement was not only to adopt but to make the plaintiff an heir at law, so that she should inherit the property. In discussing this very point the court calls attention to the fact that under the *agreement* in that case the plaintiff would have been entitled to recover the property from any devisee of the foster parent. In such a case as the one at bar, where there was no agreement that plaintiff should inherit or be given any property, and where plaintiff himself concedes that up to the moment of his death the said Edward Johnson had the full and absolute right to dispose of all of his property by will, there might well be a different holding in regard to laches. It might well be held that the contract was broken, not upon the failure to give him property at the time of Johnson's death, but upon the final failure to adopt the plaintiff, which occurred when he became of age. (As to laches, see *Stevenson* v. *Boyd,* 153 Cal. 630 [19 L. R. A. (N. S.) 525, 96 Pac. 284]; *Harris* v. *Hillegass,* 66 Cal. 79 [4 Pac. 987]; *Kleinclaus* v. *Dutard,* 147. Cal. 245 [81 Pac. 516].) Respondents argue, "it is not the claim of an heir which we are seeking to enforce. It is the claim by one who might have been an heir had his contract been complied with, but who is entitled to complain and entitled to recover if he can prove his case because the decedent failed to take the steps which would have made him an heir and entitled to all the residue of the estate.'' If this be true, no agreement to make him an heir, other than an agreement to adopt him, being claimed, did not the breach occur, if at all, at the last opportunity to adopt the plaintiff? We mention this because we do not regard respondents' authority as conclusive in this matter, but under the view we take of other portions of the case, we do not consider it necessary to decide the point.

It is further urged that plaintiff's complaint shows no consideration, in that the aunt of plaintiff, with whom the contract is alleged to have been made, was not the guardian of the child; had no legal right to his support, society or services; and surrendered nothing whatever in agreeing to the adoption. We think, however, that if such a contract was made, it was made primarily for the benefit of the child who was the real party in interest, and that

the aunt occupied a position which authorized her to act on behalf of the child, under the circumstances. (*Steinberger* v. *Young*, 175 Cal. 81 [165 Pac. 432].)

It is also urged that there is a failure of consideration in that the performance of services on the part of the plaintiff is not sufficiently alleged. While the allegations in this regard are quite general and a part of them are conclusions, so far as collateral attack is concerned, and ·for the purpose of this action, we may assume that a cause of action is set up by the complaint, especially · in view of the possibility of amendment. (*McClung* v. *Watt*, 190 Cal. 155 [211 Pac. 17]; *Mills* v. *Brown*, 205 Cal. 38 [269 Pac. 636].)

The next question is whether the Superior Court sitting in probate has jurisdiction to pass upon such a claim as is raised by the plaintiff Erickson, or whether his exclusive remedy is a suit in equity. In this connection, the respondents urge that the suit filed by Erickson is one, not to enforce the claim of an adopted child, nor even to enforce the right of adoption, but is one for the specific performance of a contract to adopt, and for relief by way of damages for the breach of said contract, the amount of damages being the amount left in the estate and in respect to which the deceased died intestate. It is urged that, until this action in equity is decided, it cannot be told whether or not there will be a residue in the estate subject to distribution. Respondents rely especially on the case of *Furman* v. *Craine, supra,* which they insist is similar to the case at bar. We do not so understand the case cited. In that case, the parents entered into a written contract with a widowed aunt of the child, in which the aunt agreed, in consideration of the relinquishment of all claims and rights by the parents, to adopt the child as her own, give her all the rights of a child in and to her estate, and make the child her heir at law, so that she would inherit the aunt's property upon the latter's death. The court particularly pointed out that the agreement was sufficient to have enabled the child to follow the property and recover it from a devisee, in the event the aunt had thereafter willed it to another.

Respondents cite many cases in California and in other states. As typical of these we may mention a few: *Owens*

v. *McNally*, 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710, 713], the first case along this line in California, was a case where it was sought to enforce specific performance of a contract to give all the property of an uncle to his niece. While the court held that the circumstances in that case did not permit the relief demanded, it was held that an agreement to dispose of property in a particular way was valid, if definite and certain. The court said: ''Specific performance, as we have said, is not to be decreed under strict rule and formula. Every consideration which may properly be urged upon the court is to be weighed and passed upon, and it will be decreed only when no other adequate relief is available to plaintiff.'' In *Steinberger* v. *Young, supra*, the agreement relied upon was one not only to adopt and treat the plaintiff as a daughter, but also that the plaintiff should be an heir of the foster mother, and upon her death should receive all of her property. In *Monsen* v. *Monsen*, 174 Cal. 97 [162 Pac. 90], the court upheld the right to enforce a contract to make a particular disposition of property upon the death of the promisor, when the agreement is sufficiently definite and certain, but held that the particular circumstances in that case did not warrant relief.

Respondents call attention to the fact that in all these cases, and many others, the procedure followed was that of a suit in equity, rather than taking steps for relief in any pending probate proceedings. It would seem, however, that there is a definite distinction between cases involving a contract under which a claimant has a definite right, existing before the death of the other party, to be given certain property, of which right he cannot be deprived, even by the will of the other party, and cases where the agreement is only one to adopt, and the other party is left free to dispose of his property as he chooses, either before death or by will. The latter is the case here, the claimant conceding that Edward Johnson retained until his death the full right to dispose of all of his property by will. It must be conceded that in those cases, where a stranger is claiming property adverse to the estate, and where, if the plaintiff prevails, the property will be taken away from the estate and will no longer be a part thereof, that the probate

court has no jurisdiction, but that a separate action in equity must be filed for that purpose. (*Estate of King*, 199 Cal. 113 [248 Pac. 519].) A closer question is presented in those cases where the alleged contract was both to adopt and to give certain property to the claimant. In such a case there is sometimes an element in the claim adverse to the estate, which may, under some circumstances, make a court of equity a proper, if not an exclusive, forum. This fact, and the fact that sometimes the right to proceed with the probate proceedings is not insisted upon, may explain why the equity procedure was followed in the cases relied upon by respondents. But in the case at bar we have an alleged agreement to adopt alone, unmixed with any agreement to give property. The plaintiff, upon his own showing, had no rights in the property until the death of Edward Johnson. Since Johnson neither disposed of this portion of his estate, nor agreed to dispose of it, during his lifetime, the property is unquestionably a part of his estate. The plaintiff Erickson is claiming not adverse to the estate, but in privity with it. Whether he relies on a right of inheritance through contract, or on a right arising through a breach of the same contract, his claim depends upon his ability to establish his equitable status as an adopted son. Under such circumstances, we think a suit in equity is not necessary, and certainly is not an exclusive remedy. A probate court has the power to pass upon equitable issues involved in determining questions that may arise within its jurisdiction. (*More* v. *More*, 133 Cal. 489 [65 Pac. 1044, 66 Pac. 76]; *In re Burton*, 93 Cal. 459 [29 Pac. 36].) A probate court has the power and the duty to determine heirship, all interests and all claims of interest in an estate, if these are not adverse to the estate. (Code Civ. Proc., secs. 1664, 1665; *In re Burton, supra.*) We are of the opinion that the probate court has jurisdiction to pass upon any rights or interests in this estate claimed by plaintiff Erickson, and by so holding, the plaintiff is not deprived of his right to a full hearing, since he has ample opportunity to present his claim, and have his rights passed upon, in the hearing on the petition for distribution in the estate mentioned.

The third question is whether or not the hearing on the petition for distribution may be delayed until the

determination of the suit in equity, filed by the plaintiff Erickson. The respondents contend that, in California, the final distribution of an estate may always be postponed where there is litigation pending which might affect the final distribution of the estate. In support thereof is cited: *Estate of Ricaud,* 57 Cal. 421; *Estate of Colton,* 164 Cal. 1 [127 Pac. 643]; *Estate of King,* 199 Cal. 113 [248 Pac. 519]; *Estate of Ross,* 180 Cal. 643 [182 Pac. 755, 757]; *Plass* v. *Plass,* 121 Cal. 131 [53 Pac. 448]; *Estate of Burdick,* 112 Cal. 387 [44 Pac. 734]. In *Estate of Ricaud,* an action in ejectment had been commenced against a decedent in his lifetime, and it was not known whether or not the estate owned the property; in *Estate of Colton,* the greater part of the assets of the estate consisted of a claim against a corporation, which was being litigated; in *Estate of King* reference was made to assets which might be taken away from an estate by a partner; in *Plass* v. *Plass* rights were involved which were derived from another source entirely; in *Estate of Burdick* there was involved money which it was claimed never belonged to the deceased. The case of *Estate of Ross* does not sustain the contention of respondents in this regard, but quite the contrary. The court there said: "The law contemplates that this proceeding thus properly instituted shall be carried to decree of distribution as speedily as is reasonably practicable with due regard to the interests of all concerned, and any interested party appearing is entitled to have it so carried on."

The court held that distribution could not be delayed even to await the determination of a proceeding under section 1664 of the Code of Civil Procedure. The following is quoted with approval:

"Where the circumstances are such that the questions involved may as readily be determined on a pending proceeding for distribution, there is no good reason for even *postponing* the hearing and determination of the distribution proceeding merely because a proceeding under section 1664 has been initiated."

The court held that the utmost effect that could be given to the contentions of the claimant was to treat them as a claim that she was an heir. That is the effect of the claim of plaintiff Erickson, that he is an equitable son and heir,

and since the question involved may as readily be settled at the hearing of the petition for distribution, no good reason appears for delaying that hearing.

None of the authorities mentioned support respondents' claim that a hearing on the petition for distribution may be postponed, under the circumstances of this case. Respondents seek to avoid the effect of this by the contention that this is, in reality, not an action to enforce a contract to adopt and thereby make him an heir, but that ·it is an action for damages for the breach of such a contract, but the gist of the action is his claim that he is, in equity, the son of the deceased. Even if his action be considered one for damages, no reason appears why he should be given a right in excess of that existing in an ordinary action for damages. He claims a benefit which practically amounts to the effect of a writ of attachment. He not only asks that a restraining order be entered at the conclusion of his suit as prayed for, but he appears by affidavit in the probate proceedings, in which he says he is not interested, and asks that all action there be suspended and the property preserved intact, to be made available to him in the event of his recovery at some future date, in his other action. Some interesting questions might arise, as, for instance, whether he has not such other remedy as will defeat his right to the issuance of a restraining order, and whether a Superior Court may temporarily restrain the same court sitting in probate from exercising its jurisdiction. Plaintiff apparently recognizes these difficulties, and does not even ask that the probate court be restrained from proceeding either temporarily or at the conclusion of the hearing in his suit in equity, but only asks that at the conclusion of the action an order be issued to restrain the administrator from paying over any money. In the meanwhile, no restraining order against anyone having been issued, and without in any manner subjecting himself to any of the burdens that might be incumbent upon him in the usual issuance of a restraining order, and without any apparent authority in law for so doing, he attempts to hold up those proceedings in the probate court to which petitioner is otherwise entitled, by merely filing an affidavit setting forth the fact that he has filed in another forum an action the object and purpose of

which "is to obtain a decree of specific performance of a contract . . . to adopt the plaintiff, . . . and to award *that portion of the estate* of Edward Johnson, deceased, . . . to the said Charles Erickson." The filing of this affidavit was not in accordance with any provision of law, cast no duty on the executor, nor on the court, to take any action thereon, and should not have been allowed to delay the hearing of the petition for distribution, when the estate was otherwise in condition to be closed. (*Estate of King,* 199 Cal. 113 [248 Pac. 519].) This is especially true when the claim set up by the affidavit is one in privity with the estate which fully recognizes the assets of the estate as belonging to the deceased up to the moment of his death, with the power of disposition, testamentary or otherwise, unimpaired, and when the claim must stand or fall by his right to be considered a son of the deceased, although this right be equitable, rather than legal. He is not claiming hostile to the estate, or as a stranger to the estate, but his entire claim is dependent upon the fact that there is property rightfully in the estate, as to which the deceased died intestate, and which is subject to distribution to someone.

If the estate had already been distributed, a suit in equity might have been permissible on the theory that the distributees held in trust for the plaintiff. The estate not having been distributed, the plaintiff had a speedier remedy in the probate proceedings. If he has sufficient evidence to bear out his claim, no reason has been shown why this cannot be done at the hearing of the petition for distribution. Under such circumstances a suit in equity, if proper at all, which we doubt, was certainly not an exclusive procedure. There was nothing before the trial court to prevent or delay this hearing upon the petition for distribution, and the refusal of the court to act at all upon said petition, one way or the other, interfered with a substantial right belonging to petitioner.

Section 1665 of the Code of Civil Procedure provides that on final distribution "the court must proceed to distribute the residue of the estate in the hands of the executor, or administrator, if any, among the persons who by law are entitled thereto." It cannot be successfully disputed that there is a residue of an estate in the hands

of this executor, as to which the deceased died intestate, and this being so, we think it was the duty of the court to determine, from the evidence submitted at the hearing, what persons were entitled thereto, and to make distribution accordingly. In *Estate of Strong,* 119 Cal. 663 [51 Pac. 1078, 1079], the court said:

"The whole subject matter of dealing with the estates of deceased persons is one of statutory regulation, and the policy and intent of our statute very clearly contemplates that property of decedents left undisposed of at death . . . shall, for the purposes of ascertaining and protecting the rights of creditors and heirs, and properly transmitting the title of record, be subjected to the process of administration in the probate court. Indeed, there is no other method provided by the statute whereby the existence of creditors or heirs of decedents may be conclusively established. And such administration may be initiated and had at the instance of any person entitled under the law to administer upon the estate.

"Probate proceedings being purely statutory, and therefore special in their nature, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided.

"Moreover, and aside from the mere rights of appellant in the premises, the court having assumed jurisdiction of the estate in a proper case, was without power to thus summarily dispense with the further administration of the estate and refuse to further proceed therein."

We think the court had no more power to postpone a proceeding of this kind on the showing here made than it would have had to dispense with any further proceedings in the matter.

"If all debts and charges against the estate, including the expenses of administration, have been fully paid, and there is in the hands of the executor or administrator an ascertained balance of assets subject to distribution, the estate is ready for distribution, and distribution cannot be delayed. The court 'must' proceed to make distribution. (Secs. 1543, 1665, Code Civ. Proc.) The command of the

law is, under such circumstances, peremptory. (*Estate of Pritchett*, 51 Cal. 568.)'' (*Estate of Ricaud*, 57 Cal. 421.)

Even with reference to adverse claims, which the probate court has no jurisdiction to pass upon, the hearing of petition for distribution cannot be delayed to await the determination of prospective litigation. (*Estate of Ross, supra; Estate of King, supra.*) The reasons for the rule would be much stronger where the claim is not adverse to the estate.

The one remaining question is whether the present proceeding for a writ of *mandamus* may be maintained by petitioner, or whether his only remedy is by appeal from the order of the court continuing the hearing of the petition for distribution. Section 963 of the Code of Civil Procedure permits an appeal from ''a judgment or order . . . refusing, allowing or directing the distribution or partition of an estate, or any part thereof.'' The respondents argue that the court here did not decline to take jurisdiction, but merely exercised a discretion to postpone any action, until another suit was determined. The writ prayed for may not be used in any way to interfere with a proper exercise of discretion in acting upon any matter before the court, but it may be used to compel a court to act in a matter within the line of its duty. The court did not act here, either to refuse, or to allow, or to direct any distribution, but merely failed to act upon the matter at all, and the writ prayed for was the only remedy left to petitioner.

An order refusing to postpone a decree of final distribution is not appealable. (*Estate of Burdick*, 112 Cal., at 396 [44 Pac. 734].) Neither is an order postponing the consideration of a petition for such a decree. We are of the opinion that the trial court, in refusing to hear the matters involved in the petition for distribution, as alleged, declined to perform a duty imposed upon it by law. (*Hensley* v. *Superior Court*, 111 Cal. 541 [44 Pac. 232]; *French* v. *Superior Court*, 3 Cal. App. 304 [85 Pac. 133].)

It is therefore ordered that a peremptory writ of *mandamus* be issued to the respondents, requiring said court and said judge thereof to proceed as soon as the business of the court will permit to set for hearing the petition for distribution in the estate of Edward Johnson, deceased, and

after considering the evidence presented at such hearing, to render such judgment or order as may be proper under the evidence there produced.

Marks, J., concurred.

Sloane, P. J., being disqualified, took no part in the decision of this case.