**CHENEY et al. v. CHENEY et al.**
No. 13000.

Court of Civil Appeals of Texas.
Fort Worth.
Nov. 30, 1934.

Rehearing Granted March 29, 1935.

Rehearing Denied April 26, 1935.

W. L. Dean, H. S. Garrett, and Perkins & Culbertson, all of Fort Worth, for appellants.

Cantey, Hanger & McMahon, Gillis A. Johnson, and Warren Scarborough, all of Fort Worth, for appellees.

LATTIMORE, Justice.

This is an appeal from a judgment for plaintiffs in a suit to establish and enforce a contract by Manton Cheney to make a will of his estate to two infant girls, Betty June and Virginia Kimrey; they being now known by the surname of Cheney.

The father of these children abandoned them before the birth of the later, and in February, 1929, when they were one and a half and three years of age, respectively, they were abandoned by their mother in Tarrant county. They were taken in charge by the juvenile officers and a dependency case made concerning them in the Forty-Eighth district court, Judge Bruce Young presiding. On a trial they were adjudged dependents, and judgment pronounced and entered of record that they be committed to the custody of the State Orphans' Home at Waco. Before they could be delivered to that institution, several people offered private homes for them, among them Manton Cheney and wife. Cheney stated to Judge Young that he would take the children permanently and would rear and educate them and give them his and his wife's personal care and guidance and will them his estate on his death. At Judge Young's request they took the children on trial only, but some days later returned to state that the children were satisfactory. On both of these occasions Judge Young told them they could not have the children unless they agreed to take them permanently and to will them all of their estate, and that the custody was subject to the children being removed from their control if they did not furnish them proper surroundings for the develop-

ment of their physical, mental, and moral welfare.

In September, 1929, the mother returned and called on Judge Young, and was advised by him and Cheney of the above facts. After some discussion, she signed a transfer of parental authority, and the Cheneys signed deeds of adoption, all of which were acknowledged but not filed of record up to the time of Cheney's death.

In 1930 Mrs. Cheney procured a divorce from Mr. Cheney, and by the decree of that court, the Forty-Eighth district, these infants named as Cheneys were awarded to the custody of Mrs. Cheney. Mr. Cheney died in 1931 intestate.

The verdict reads:

"Gentlemen of the jury: This case is submitted to you on special issues and you will, from the evidence introduced before you, answer the following questions:

"Special Issue No. 1: Question: Do you find from a preponderance of the evidence introduced herein that prior to the time that Judge Bruce Young finally placed the custody and control of the minors, Betty June and Virginia Cheney, with M. F. Cheney and his wife, it then seemed to said Judge Bruce Young that said minors would by them be furnished a suitable home for insuring their proper care, education, maintenance and moral and physical training? Answer yes or no. Answer: Yes.

"Special Issue No. 2: Question: Do you find from a preponderance of the evidence introduced herein that M. F. Cheney verbally agreed with Judge Bruce Young, acting for and in behalf of the minors, Betty June and Virginia Cheney, that he would will to said minors, at his death, all the property he might own at that time in consideration of said Bruce Young giving to said Cheney and wife the permanent custody and control of said minors, which custody and control should continue so long as the conditions surrounding said minors should continue to be for their physical and moral welfare? Answer yes or no. Answer: Yes.

"Special Issue No. 3: Question: Do you find from a preponderance of the evidence introduced herein that said Bruce Young would not have entered into said verbal agreement with said M. F. Cheney if said Cheney had not agreed to will his said property to said minors at his death? Answer yes or no. Answer: Yes.

"Special Issue No. 4: Question: Do you find from a preponderance of the evidence introduced herein that the custody and control of said minors, Betty June and Virginia Cheney, were given to said M. F. Cheney and wife in accordance with the terms of the verbal agreement inquired about in question 2 above? Answer yes or no. Answer: Yes.

"Special Issue No. 5: Question: Do you find from a preponderance of the evidence that Judge Bruce Young acting for and in behalf of said minors, Betty June and Virginia Cheney, was prevented by the agreement and arrangement, if any, which were made and carried out with said M. F. Cheney, from securing said minors a suitable home with other persons where they would have had proper physical and moral training and financial advantage? Answer yes or no. Answer: Yes.

"Special Issue No. 6: Question: Did Judge Bruce Young advise M. F. Cheney at the time the agreement, if any, was made, under which he secured the children, that an opportunity then existed to secure for said minors a suitable home with other persons, where they would have proper moral and physical training and financial advantages and that such opportunity would be lost or materially lessened as the children grew older? Answer yes or no. Answer: Yes.

"Special Issue No. 7: Question: Was such opportunity as then existed, if any, for securing said minors a suitable home with other persons, where they would have had proper moral and physical training and financial advantages, as inquired about in question 5, lost or materially lessened at the time M. F. Cheney died, about two and a half years later? Answer yes or no. Answer: Yes."

The pleadings nowhere allege the execution of the adoption deed or any agreement to adopt, nor is any adoption by estoppel alleged or prayed for. The entire case is laid on an agreement to will. Hence Cubley v. Barbee (Tex. Sup.) 73 S.W.(2d) 72, is not controlling, since that case was wholly founded on an adoption and that those denying such adoption were estopped.

As we see it, that decision is not necessarily in conflict with Hooks v.

Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216, which denied the validity of an oral contract made by a father to deliver his son to another in consideration of that other giving the son the proper rearing and also willing the son his property. The opinion in Hooks v. Bridgewater rested on two propositions; one, that such a contract was contrary to public policy in encouraging parents to evade their parental duties and obligations; and, second, that as to land it was violative of the statute of frauds. Article 3995, subd. 4, R. S. A complete adoption with the proper consent of the parents, if living, creates a status of parent and child. The obligations and rights of parenthood come into existence. All the laws applicable to parents and children attach. If such an adopting parent should desert the child, he violates our child desertion laws, and is subject to criminal prosecution by officers not privy to the contract of adoption. Likewise as to our compulsory education laws. He can be sued for necessaries furnished the child. A present and continuing obligation not subject to the volition of any of the contracting parties binds him by the adoption. On the other hand, the contract to will property is not enforceable until death.

▮ We look, then, to this suit only as one to establish and enforce a contract to make a will. The contract is alleged to have been made first by District Judge Young. What is his authority? When Cheney entered the lives of these infants, they were, by judgment of that judge, dependent children as defined by articles 2329–2338, inclusive, R. S. Those statutes which refer to a "juvenile court" in the handling of juvenile dependents do not create a new court. They do but particularize machinery for the exercise by the district court of the "original jurisdiction and general control" over minors given to the district court by article 5, § 8, of the Texas Constitution. Thomason v. McGeorge (Tex. Com. App.) 285 S. W. 285. By a judgment of the Forty-Eighth district court, these infants stood committed to the custody of the State Orphan's Home at Waco. That order was final as to the merits of the case on the day of trial. The custody of these infants remained one of great interest to the state of Texas, and, upon a showing made in the proper way at any later date that conditions had changed so as to make a change of custody advantageous, a district court having jurisdiction of the person of the infants could so decree. This rule finds its statutory corollary as far as the Forty-Eighth district court is concerned in article 2336, R. S., especially providing that the court decreeing the dependency may change the custody "if * * * it is made to appear to the court such change is to the best interest of the child." Moreover, Judge Young was a member of the juvenile board of Tarrant county as created by articles 5139–5142, R. S., inclusive, which board is an administrative body for the further carrying out of the district court's general control over minors given by article 5, § 8, of the Constitution. As such member he was charged with the duty of seeking out the best living conditions for these minors.

The great solicitude of the state for its children is expressed in multiple opinions. It has its foundation in the realization that these children are the citizens of the oncoming years and that the prosperity of the government depends upon their responding to its needs. The purpose which must guide the district judge, the goal to which the juvenile board strives, is therefore to place the infants in that custody which will best capacitate them for good citizenship. Wealth for the infant is in this inquiry of limited importance to the judge. Riches and good citizenship are not synonymous. The camel which could not pass through the eye of the needle referred to by the Christ may have been a figure of speech, but it is an eloquent warning to every judge who holds in his hands the development of the life of a child that character, wisdom, and health are his beacon lights in his making out the course of life of that infant.

▮ It was thus not only the right, but the duty, of Judge Young to find a better home for these children than the orphans' home, if such was obtainable. There was not anything wrong or illegal in his negotiating with the Cheneys concerning the custody of the infants. Rather he is to be commended. But in so doing he did not act judicially. He could do what he did as a member of the juvenile board, but, when we bear in mind that none of these conferences with the Cheneys were in open court, that court was adjourned, that no pleadings were filed as required by article 1997, R. S., no evidence taken, no judgment rendered or entered, it is plain that

these infants were never committed to the custody of the Cheneys by any judicial proceedings. Judge Young, district judge of the Forty-Eighth district court, could not contract with the Cheneys in advance of the hearing in open court that he would judicially decree the children to their custody. Courts must be open. The history of the evils of the star chamber sessions of the courts of England is too plain and unwholesome for us to countenance any move in that direction, however high the motives, as Judge Young's were, or however praiseworthy the results. The children were never in the custody of Mr. Cheney by any judicial act of the Forty-Eighth district court. If the agreement of Mr. Cheney to make a will was upon these children being placed in his legal custody by the Forty-Eighth district court, then that agreement was wholly unperformed and the consideration moving to Cheney has not been delivered. It would be as reasonable to require of a vendee in an oral contract for land the money consideration merely by tendering him possession. Cheney had the children until his divorce simply because no one contested his possession.

It is urged that Bruce Young, as next friend of the infants, had authority to make the contract. Cheney knew of the dependency proceedings, and certainly it must follow that he is presumed to know under these proceedings as taken that all he actually had was the physical possession of the children. The record does show that the judge told him that the parents would have the right to reclaim the children upon a sufficient showing and that he could not secure the children permanently as against the parents except by the latter's consent, and further that, if the children were not properly cared for, the court would take them from him. It also shows that, knowing all this, he reiterated his agreement to will the infants his property. Months later he makes the same statement to Mrs. Kimrey, their mother, when she was told by Judge Young it was best for the children for her not to take them out of Cheneys' home and on that statement she signed a transfer of parental custody. These children were mere babes, barely old enough to walk and wholly incapable of any discretion. They were incapable of any understanding of any matter of custody. Judge Young was charged by law to secure them the opportunities of life. He made an agreement with Cheney which the latter was willing to agree to and did receive the benefits therefrom. If we can say that Cheney as a matter of law knew the state of the proceedings, or rather the absence of any procedure to make authoritative his possession, and made his agreement with the judge content to accept possession of the children as satisfactory consideration for his agreement, then Cheney got all that he contracted for. We think that Judge Young's agreement was really an agreement by the children, one which by their infancy they were unable to speak and must have spoken for them by some one who was charged with their protection. True, the infants could repudiate it by virtue of their minority, but that is a personal privilege and affords no ground for the adult contracting party to claim a like privilege. Cheney made the agreement knowing that he took his chances on being able to prove from time to time, as the occasion might arise, that the children's best interests were being subserved. The supreme object of the law is not syllogistic perfection. Its object is to best adjust the lives of our people to each other. We should and do adopt a rule which will best promote the welfare of our homeless children consistent with the security of social and business fabric.

The state's interest in these children would not permit their being bound out to Cheney in consideration alone of his agreement to will them his property. The substance of the consideration was his agreement to properly care for their development to good citizenship. Still, as a part thereof and as a binder which would tie Cheney to his task and stimulate him to perform the thousand daily acts which constitute good fatherhood, we think these children through Judge Young might well exact of him the agreement to will. Steinberger v. Young, 175 Cal. 81, 165 P. 432. This is not contrary to Hooks v. Bridgewater, supra. No one here seeks to evade a parental obligation or to sell a child. These infants' father and mother had abandoned them, and the mother was physically and financially destitute. It is not a case where the master of the ship seeks to abandon command while the storm is raging, but is rather a case of two little boats adrift on the sea of life and salvaged by him who found them. The reasoning which supports the rule in Hooks v. Bridgewater impels with equal force the upholding of the acts of Cheney in taking

these homeless infants and the commendation of the efforts made by the juvenile authorities to obtain a proper home for them.

■ We are not inclined to consider seriously appellees' contention that Cheney's heirs are estopped because Cheney's acts prevented the children from being given to some other worthy person. The evidence is too vague, showing only that some other persons, whose names and stations in life and worthiness are and were unknown, inquired of Judge Young about taking the children.

This suit was filed by Judge Young as next friend for the children. After the taking of evidence started, Judge Young was prevented as a party to the suit from testifying to transactions with, and declarations by, the deceased Cheney. Article 3716, R. S. Counsel for appellees Young and the infants thereupon arose and asked leave to substitute Dr. Coffey as plaintiff next friend. It was shown that Dr. Coffey had only been consulted about the matter a few moments in advance, that he was at the time testifying in another court, and was excused therefrom long enough to enter this trial court and accept the responsibility. Appellant objected to this procedure, claimed surprise, and moved for a continuance. All were overruled and the trial proceeded forthwith.

It was error for the trial court to force this trial on appellants in this manner. The position of next friend in such a suit is no idle honorarium. It is a solemn responsibility and one which should have the careful supervision of the court. The next friend determines and directs the filing and prosecution of the suit. Assuming what we know to be true, that the excellence of counsel for appellees made the next friend only a necessary name, still defendants had the right to demand that the next friend acquaint himself with the proceedings so that whatever judgment might be rendered would not be subjected to attack by the minors for failure of the next friend to protect their interests. Nor do we mean this as any criticism of the court for its appointment of Dr. Coffey, whose ability is well known. The appellants, however, were entitled to an opportunity to prepare their defense against the testimony of Judge Young whom they knew could not as a plaintiff testify as to Cheney's declarations. When Dr. Coffey was substituted as plaintiff, the suit was a different suit than before. These defendants were entitled to an opportunity to prepare their defense against this new suit. In Henderson v. Kissam, 8 Tex. 46, it is said: "Great liberality should be exercised in admitting amendments, for the promotion of the ends of justice, when the rights of other parties would not be sacrificed."

Judge Hemphill then quotes Story on Equity Pleadings as follows: "But when an injury may arise to others, the indulgence has been more rarely granted. * * * The matter brought into the bill by amendment, will not have relation to the time of filing the original bill; but the suit will so far be considered as pending only from the time of the amendment."

And in Armstrong v. Bean, 59 Tex. 492, 493, where a new plaintiff was substituted: "If he had filed pleas, going to the question of jurisdiction over his person for want of service upon him, they should have been sustained. No postponement of the cause to enable him to prepare for trial was asked."

A reasonable time for preparation must be given. Coleman v. Heller, 13 S. C. 491.

■ Appellants pleaded the statute of frauds, requiring a memo in writing of such a contract to be valid to effect the transfer of title to land against this oral contract. All of Cheney's property was personal property except two lots in Mt. Pleasant, Tex., which were of small value and yielded him revenue of some five or ten dollars per month. The trial court refused to give the children judgment for the real estate, but did effectuate the oral agreement as covering the personal property. We think the statute of frauds is not contravened by such ruling. The children do not seek to sever or divide their obligations or performance, but, performing all, renounce their rights to so much of the consideration due them as was land, and ask performance only as to that due them which was personalty. If they had to divide the contract as to their obligations in order to divide the benefits, we would have a much more difficult question, but such is not the case. The language of Hooks v. Bridgewater, while not declaratory, suggests that the contract was voidable only "as to the land."

■ There are numerous assignments of error for admission of testimony as to the conditions and events prior to the depend-

ency judgment. So much of that evidence as showed that the children were in need of Cheney's home at the time he contracted to give it, that is, as showed that the children were destitute and that the parents could not be reasonably expected to furnish such home, was admissible. The remainder was not admissible. Inasmuch as these differences will not arise probably on another trial, we do not particularize our discussion of them further. The distinguishing features at the basis of our views of this case are that it was necessary to find for them a permanent home. Evidence to show it is admissible. The dependency judgment established as of its date the fact that the children were then in need of being taken from their then surroundings, no more.

The judgment of the trial court is reversed and remanded.

### On Motion for Rehearing.

We have concluded upon further consultation that the appellant is not entitled to reversal of the judgment by virtue of the proceedings substituting Dr. Coffey as next friend. We do not regard the appointment of a next friend, under article 1994, R. S., as an administrative function, as appellee contends is held in Mabe v. Gille Mfg. Co., 219 Mo. App. 234, 271 S. W. 1023, but, on the contrary, regard same as essentially judicial. The fact that some one must be appointed next friend does not eliminate recognition of the duty that is vested in the court to use a wise discretion in making the appointment. Peters v. Allen (Tex. Civ. App.) 296 S. W. 929. So here we find Mrs. Cheney now the adopting mother of these infants. Plainly she is a natural "next friend," and likewise it is plain that her purpose in not suing on behalf of her children is in order that she may testify without the restrictions of article 3716, R. S. Whatever may be our admiration of such strategy, it was a plain device to violate the policy of the law and proper opposition thereto would receive our support.

However, our attention is directed to the fact that no application for continuance was filed or presented other than the oral request made by counsel, upon the grounds of surprise and that the defendants had relied upon the fact that they would not have to meet testimony from Judge Young, since he was prohibited as next friend from testifying to transactions with or declarations by the decedent, unless called by the defendants to do so. Such oral motion is not sufficient. Finlayson v. Roberts, 82 S.W.(2d) 1020 (by this court); City of Wichita Falls v. Lipscomb (Tex. Civ. App.) 50 S.W.(2d) 867.

Moreover, we are strengthened in our position that the substitution is probably not injurious to appellant's rights by the fact that the motion for new trial, made after time for investigation had elapsed, contains no allegation of fact tending to show any such injury or that a postponement of the trial would have been of any benefit to appellants.

So holding, we must rule more particularly on the assignments relating to the submission of the evidence.

The court admitted in evidence the documents signed by Manton Cheney and wife, which, if properly filed during his lifetime, would have made the infants his children by adoption. We think they were admissible as a declaration by Cheney bearing on his contract to will. They were evidence tending to show his acceptance of terms of Judge Young's proposition, in spite of the uncertain condition of the legal status of the children in regard to the dependency case and the whereabouts of the father.

The evidence of the destitute condition of Violet Shaw at and just preceding the making of Cheney's contract with Judge Young we think admissible and an important factor in showing the duty of Judge Young to provide for those children a home. Manifestly, the duty of those officials in charge of juvenile home finding is not called into actual execution until the parents have failed or refused to perform their naturally and legally imposed parental obligation of furnishing the necessities of life, and some grounds must exist for a belief that such dereliction will continue in the future.

While Judge Young should not have been permitted to impeach in the collateral proceedings a judgment of his court by oral testimony, we regard his statement that he held his recorded judgment "in suspense" as not being of sufficient importance in its effect on the issues of this case to justify a reversal.

The motion for rehearing is granted, our former judgment set aside, and the judgment of the trial court is affirmed.